CAROL ESPEVIK et al., Plaintiffs-Appellants and Cross-Appellees, v. ROSEMARY REINER KAYE, Indiv. and as Ex'r of the Estate of Peter Paul Reiner, Deceased, et al., Defendants and Counterplaintiffs-Appellees and Cross-Appellants (Marengo State Bank, Defendant and Counterdefendant-Appellee; Dorothy Jevne, Ex'r of the Estate of Paul W. Jevne, Deceased, Counterdefendant-Cross-Appellee).

Second District   No. 2—95—0219

Opinion filed January 25, 1996.—Rehearing denied March 1, 1996.

690

Richard W. Eicksteadt, of Pollock, Meyers, Eicksteadt & Weech, Ltd., of Marengo, for appellants.

George Kaye, of Paxton, for appellees Gretchen Blanchette, Gloria Carr, Elizabeth Irvine, and Rosemary Reiner Kaye.

Michael E. Coppedge, of Cowlin, Curran & Coppedge, of Crystal Lake, for appellee Marengo State Bank.

D. Kendall Griffith, Stephen R. Swofford, and Gary W. Klages, all of Hinshaw & Culbertson, of Chicago, for appellee Dorothy Jevne.

James E. Berner, of Caldwell, Berner & Caldwell, of Woodstock, guardian *ad litem.*

JUSTICE THOMAS delivered the opinion of the court:

The plaintiffs, Carol Espevik, Floyd Cool, Mark Cool, John Cool, Philip Cool, and Richard Cool, filed a seven-count, sixth amended complaint against the defendants, Rosemary Reiner Kaye, individually and as executor of the estate of Peter Paul Reiner (Peter), Elizabeth Irvine, Gretchen Blanchette and Gloria Carr, alleging, *inter alia*, that the defendants wasted and mismanaged property held in a land trust by failing to pay real estate taxes on the property. The plaintiffs further sought to impose a constructive trust on the property, alleging that the defendants violated the terms of the trust by conveying trust property and refusing to hold the proceeds from the conveyance in the trust to be distributed to the plaintiffs as beneficiaries upon the death of Peter. Following cross-motions for summary judgment, the trial court granted the defendants' motion for summary judgment and dismissed the plaintiffs' complaint. The court further ordered the plaintiffs to pay the attorney fees of the guardian *ad litem* appointed to represent Peter in the proceedings. The plaintiffs appeal the summary judgment order and the order to pay the fees of the guardian *ad litem*. The defendants cross-appeal the denial of their motion for the imposition of Supreme Court Rule 137 sanctions against the plaintiffs.

On October 22, 1979, Peter and Ethel Reiner (Ethel), husband and wife, accepted the assignment of a beneficial interest in a land trust. At that time, the sole property in the trust consisted of a single parcel of land located in McHenry County, Illinois. Later, Peter and Ethel conveyed two additional parcels of land to the trust. Also on October 22, 1979, Peter and Ethel executed an amendment to the trust which provided that the "entire income, use and benefit from all of the assets" of the trust was to be held for their benefit or for the benefit of the survivor. The amendment further provided that upon their deaths the assets of the trust, if any, were to be divided in two equal parts: one-half to be divided equally between Ethel's two daughters from a former marriage, Helen Schaefer Cool and Carol Schaefer Espevik, or their heirs; the other one-half to be divided equally between Peter's four daughters from a former marriage, Elizabeth Irvine, Gretchen Blanchette, Rosemary Kaye, and Gloria Carr, or their heirs. The amendment concluded by providing that the trust could be amended while both Peter and Ethel were living, but on the death of one of them, the survivor could not alter, amend, or terminate the trust, except that the survivor had the power to direct a sale of the real estate provided "the net proceeds from the sale are held by the trustee and distributed to the provisions of this Trust."

On October 3, 1980, Ethel died. Shortly thereafter, Peter moved

to Paxton, Illinois, to live with his daughter, Rosemary Reiner Kaye (Rosemary), and her husband, George Kaye. From that time, until his death at the age of 96, on June 18, 1990, Peter was cared for by his four daughters, the defendants in this case.

On January 6, 1982, Peter executed three warranty deeds conveying the three parcels comprising the trust to his four daughters. The deeds recited that consideration for the conveyances was the promise of lifetime care and support from his daughters. On that same day, Peter assigned his beneficial interest in the trust to his daughters. The deeds and assignment were witnessed by two neighbors, Claude Clough and Janet Clough, and then notarized. The deeds were eventually recorded on November 11, 1986. On November 27, 1987, Peter's daughters executed a document directing the trustee to execute and deliver a trustee's deed to two of the parcels.

On July 26, 1982, the circuit court of Ford County found Peter to be a disabled person and appointed Rosemary as Peter's plenary guardian of his estate and person. The plaintiffs do not claim that Peter lacked testamentary capacity at the time he executed the warranty deeds and assignment of beneficial interest on January 6, 1982. The unrebutted affidavits of the Cloughs indicate that Peter appeared to be of sound mind and memory on that date.

After redeeming the delinquent 1980 and 1981 trust real estate taxes, the plaintiffs purchased the delinquent taxes from 1982 through 1988. On January 18, 1983, the plaintiffs filed their initial complaint against Peter, alleging that he committed waste of the trust assets by failing to pay the 1980 and 1981 real estate taxes on the trust property. On March 4, 1983, Rosemary, as Peter's legal guardian, was substituted for Peter as a party defendant. Shortly thereafter, the plaintiffs filed a motion to appoint a guardian *ad litem* to represent Peter's estate, which motion was granted. The motion indicated that there was a possibility of a conflict of interest on the part of Rosemary, Peter's plenary guardian, based on the fact that the complaint alleged that Peter failed to pay real estate taxes.

The plaintiffs' initial complaint was dismissed without prejudice as moot based on the fact that the 1980 and 1981 taxes had been paid and redeemed. The plaintiffs eventually filed a second amended complaint which alleged seven counts. That complaint alleged that the defendants wasted and mismanaged the trust by failing to pay real estate taxes for 1980 and 1981. The complaint further sought a declaratory judgment to determine the parties' rights and duties with respect to the October 22, 1979, amendment to the trust. Additionally, the plaintiffs requested that the court impose a constructive trust on the property, alleging that the defendants violated the terms

of the trust by conveying trust property and refusing to hold the proceeds from the conveyance in the trust to be distributed to the plaintiffs as beneficiaries following Peter's death. Although the plaintiffs' complaint was amended six times, it remained essentially unchanged after the second amendment, except the names of parties were added or deleted.

On appeal, the plaintiffs contend that the trial court erred in granting summary judgment in favor of the defendants. The plaintiffs argue that Peter's right to direct a sale of the trust property was limited after Ethel died on October 3, 1980. Specifically, they urge that, while Peter had a right to direct a conveyance of the trust property, he could only do so if the proceeds from the conveyance continued to be held in the trust and, upon Peter's death, were distributed in two equal parts to the settlors' two sets of children. In support of their position, the plaintiffs rely on a portion of the October 22, 1979, amendment to the trust which provides:

"While both beneficiaries, Peter Paul Reiner and Ethel S. Reiner, are living this Trust may be altered, amended, changed or terminated at any time upon the written direction of both, and upon the death of either, the survivor shall not have the right to make any alterations, amendments changes or terminations to this Trust, except the survivor shall have the power to direct [a] sale of said premises providing the net proceeds from the sale of the same are held by the Trustee and distributed to the provisions of this Trust."

In response, the defendants point out that another portion of the October 22, 1979, amendment provides:

"Said property shall be held for the ultimate use and benefit of the following persons and in the following proportions: The entire income, use and benefit from all the assets of this Trust are to be for the benefit of Peter Paul Reiner and Ethel S. Reiner, *or the survivor*." (Emphasis added.)

They argue that this provision clearly shows that the primary intention of the trust was to provide Ethel and Peter, or the survivor of the two, with the assets of the trust, and the secondary intent was to divide the assets, if any, between their children upon the deaths of both Peter and Ethel. The defendants contend that the primary intent of the trust instrument should control over the secondary intent. Therefore, Peter was free to use and consume the assets of the trust during his lifetime.

■ The central purpose of trust construction is to ascertain the settlor's intent from the trust as a whole and to effectuate that intent if not contrary to public policy. *Harris Trust & Savings Bank v. Donovan*, 145 Ill. 2d 166, 172 (1991). In construing trusts, courts must

apply the same rules of construction as apply to wills and other contracts. *Harris Trust & Savings Bank*, 145 Ill. 2d at 172. Thus, the settlor's intent is to be determined solely by reference to the plain language of the trust itself, and extrinsic evidence may be admitted to aid interpretation only if the document is ambiguous and the settlor's intent cannot be ascertained. *Stein v. Scott*, 252 Ill. App. 3d 611, 615 (1993); *Harris Trust & Savings Bank v. MacLean*, 186 Ill. App. 3d 882, 886 (1989). Whether a trust provision is ambiguous is a question of law to be determined by the court, and ambiguity can be found only if the language is reasonably or fairly susceptible to more than one interpretation. *Stein*, 252 Ill. App. 3d at 615. A trust provision is not ambiguous merely because the parties disagree on its meaning. *Stein*, 252 Ill. App. 3d at 615.

In the present case, both parties concede that the trust terms are clear and unambiguous although they disagree as to their meaning. However, whether the trust agreement itself is ambiguous is not controlling, since it is the duty of the trial judge to interpret the agreement, which presents a question of law, regardless of ambiguity. *Barasch v. Barasch*, 259 Ill. App. 3d 958, 961 (1993). Furthermore, it is the duty of the reviewing court to determine whether the trial judge's interpretation of the agreement was correct. *Barasch*, 259 Ill. App. 3d at 961.

■ Before we turn to the language of the trust document itself, we initially note that the parties concede that the trust at issue here is an Illinois land trust (see 765 ILCS 430/1 (West 1994)) as opposed to a conventional trust. In a conventional trust, the trustee holds the legal title and the beneficial owner holds the equitable title. *Parkway Bank & Trust Co. v. Gleich*, 213 Ill. App. 3d 444, 448 (1991). In contrast, an Illinois land trust is defined as an arrangement under which: legal and equitable title to real property is held by the trustee and the interest of the beneficiary is personal property; the beneficiary has the exclusive right to direct the trustee in dealing with title; and the beneficiary has the exclusive control of the management and operation of trust property along with the exclusive right to the earnings and proceeds of the property. 765 ILCS 430/1 (West 1994); *Parkway Bank & Trust Co.*, 213 Ill. App. 3d at 448-49; *Patrick v. Village Management*, 129 Ill. App. 3d 936, 939 (1984). Thus, the owner of a beneficial interest in an Illinois land trust is afforded the right to receive the proceeds from the sale of trust property. *Patrick*, 129 Ill. App. 3d at 939. Moreover, the owner of the beneficial interest is also empowered to transfer his beneficial interest through an assignment. *Patrick*, 129 Ill. App. 3d at 939. Finally, under both a conventional land trust and an Illinois land trust, a beneficiary may

enter into a valid and fully enforceable contract to convey title to the trust property, when acting in his capacity as beneficiary, so long as the trust agreement vests in him the sole right to direct the trustee to convey title. *First National Bank of Barrington, Trust No. 11—1317 v. Oldenburg*, 101 Ill. App. 3d 283, 287 (1981).

■ Turning to the language of the trust document at issue in the instant case, we note that it clearly satisfied Illinois' statutory definition of a land trust. In that regard, the document provided that the trustee held both legal and equitable title and that Peter as the beneficiary had a personal property interest. Moreover, the document provided that the beneficiary had the power of direction over the title to the property and the right to manage the property and receive the proceeds from its sale or rental. The agreement further provided that the beneficiary's interest was assignable. Our conclusion that the document was an Illinois land trust is not affected by the language of the October 22, 1979, amendment to the trust.

By its very definition an Illinois land trust empowers the beneficiary to direct a sale of trust property and receive the proceeds. The plaintiffs nonetheless contend that Peter's power to direct a sale of trust assets and to receive the proceeds was limited after Ethel's death to the extent that any proceeds from a sale had to be held in the trust for the benefit of the plaintiffs. We disagree. The portion of the 1979 amendment relied upon by the plaintiffs in support of their position clearly and unambiguously gave Peter the power to direct a sale. The amendment provided that the proceeds were to be distributed in accordance with the provisions of the trust. The same amendment also provided that Peter, as survivor, was entitled to the "entire income, use and benefit from all the assets of [the] [t]rust." Thus, a distribution of the proceeds in accordance with the provisions of the trust meant that Peter was entitled to use and consume the proceeds in any manner he saw fit. We find that this was the primary intent of Peter and Ethel and was not inconsistent with their secondary intent, which was to divide the assets of the trust, *if any*, on the date of the last of their deaths. See *Bracken v. Block*, 204 Ill. App. 3d 23, 27 (1990) (where it was held that if primary intent is inconsistent with secondary intent, primary intent must be given precedence).

■ Although the trust document specifically noted that Peter had no right to make any "alterations, amendments, changes or terminations," this fact does not help the plaintiffs. Peter did not alter, amend, change, or terminate the trust. Rather, he assigned his beneficial interest and conveyed trust property. This was not prohibited by the trust language and in fact the document specifically gave Peter the right to assign his beneficial interest.

Sometime before Peter's death, a direction of conveyance was delivered to the trustee. The plaintiffs do not challenge the fact that a deed made in consideration of lifetime care and support is valid and will not be set aside if the grantee has substantially and fairly performed the contract. *Ropacki v. Ropacki*, 341 Ill. 301, 307-08 (1930). Here, there is no question that such a contract could be entered into or that one was in fact entered into and fully performed. It is not that the trust was terminated by Peter. Rather, this case presents a situation where, upon Peter's death, there were no assets left in the trust, having been consumed by Peter during his lifetime.

To support their position, the plaintiffs rely on the fact that Peter and Ethel had executed wills, mutually agreeing that the survivor would not alter or revoke his or her will following the death of the other. Initially, we note that the plaintiffs' argument is at odds with their concession that the trust agreement was unambiguous, since if the document is clear, the intent of the settlors is to be determined from the language of the document itself and not extrinsic evidence. More important, however, is the fact that the plaintiffs' argument supports a result contrary to the one they intend. In her last will dated September 12, 1980, Ethel left "all the rest and remainder of her estate" to Peter. Only in the event that he failed to survive her for 30 days, but not otherwise, would the estate be divided between Peter's and Ethel's daughters. Instead of supporting the plaintiffs' interpretation of the trust agreement, this shows Ethel's and Peter's intent to provide the survivor with the entire assets of the estate.

■ The plaintiffs next argue that the trial court erred in ordering the plaintiffs to pay the fees of the guardian *ad litem* appointed by the court upon the plaintiffs' motion.

We disagree. Unlike attorney fees, guardian *ad litem* fees may be allowed as costs. *Fear v. Smith*, 184 Ill. App. 3d 51, 58 (1989). While an unsuccessful party should not automatically be required to pay the fees of a guardian *ad litem* who did not appear for his benefit (*Hutchinson v. Hutchinson*, 152 Ill. 347, 354 (1894)), the decisions of which party to assess the fee against and the amount of the assessment are matters within the sound discretion of the trial court (*Rodriguez v. Koschny*, 57 Ill. App. 3d 355, 363 (1978)).

Here, the court appointed a guardian *ad litem* for Peter upon the plaintiffs' motion despite the defendants' objection and the fact that a plenary guardian had already been appointed. Although the plaintiffs claimed that a conflict existed between Peter's interest and the interest of Rosemary as the plenary guardian, it does not appear that her position in defending the plaintiffs' lawsuit was any different from that of the guardian *ad litem*. Furthermore, the plaintiffs

ultimately failed to prevail in this litigation. Under the circumstances, we find that the trial court did not abuse its discretion in ordering the plaintiffs to pay the fees.

■ In their cross-appeal, the defendants argue that the trial court erred in denying their motion for sanctions pursuant to Supreme Court Rule 137 (134 Ill. 2d R. 137).

The purpose of Rule 137 is to penalize litigants who plead frivolous or false matters or bring suit without any basis in law. *In re Marriage of Sykes*, 231 Ill. App. 3d 940, 946 (1992). It must be remembered that it is not the purpose of the rule to penalize litigants and their attorneys simply because they have been unsuccessful in the litigation. *Couri v. Korn*, 202 Ill. App. 3d 848, 857 (1990). The imposition of sanctions under Rule 137 is left to the discretion of the trial court, and the rule grants the court discretion in deciding whether to impose a sanction even if a violation is found. *In re Marriage of Sykes*, 231 Ill. App. 3d at 946.

Accordingly, we find that the trial court did not abuse its discretion in denying the defendants' motion for sanctions.

Our resolution of the foregoing issues renders moot the defendants' remaining issue in their cross-appeal with respect to their indemnity claim against the estate of deceased attorney Paul Jevne.

For the foregoing reasons, the judgment of the circuit court of McHenry County is affirmed.

Affirmed.

DOYLE and HUTCHINSON, JJ., concur.