In the

# United States Court of Appeals

## For the Seventh Circuit

No. 14-1712

STABLE INVESTMENTS PARTNERSHIP,

*Plaintiff-Appellant*,

*v.*

THOMAS J. VILSACK, Secretary,
United States Department of
Agriculture, *et al.*,

*Defendants-Appellees.*

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 12 C 5556— **John A. Nordberg**, *Judge.*

ARGUED SEPTEMBER 23, 2014 — DECIDED JANUARY 5, 2015

Before POSNER, ROVNER, and WILLIAMS, *Circuit Judges.*

ROVNER, *Circuit Judge.* Stable Investments Partnership
("Stable" or the "partnership") is the beneficiary of an Illinois
land trust that holds title to farmland in Livingston County,
Illinois. The land is leased to an operator who farms the land
and shares the revenue with the trust. As the trust beneficiary,

Stable formally holds only a personal property interest in the income generated by the farmland and neither legal nor equitable title to the land itself; title to the property instead is held by the bank which has been designated the trustee. Stable contends nonetheless that it should be recognized as an owner of the property and as such deemed eligible for receipt of farm subsidies under a now-defunct program operated by the United States Department of Agriculture ("USDA"). *See* 7 U.S.C. § 7901(12) (defining "producer" eligible for subsidies to include an "owner" that shares in risk of producing farm crop). The pertinent regulation defines an "owner" as "one who has legal ownership of farmland." 7 C.F.R. § 718.2. The USDA concluded that because Stable did not hold title to the property, it was not an owner of the property eligible for benefits; the government therefore sought return of some $448 in benefits it had initially paid to the partnership in October 2010. Stable filed suit in the district court seeking review of that adverse determination. The district court ruled in favor of the USDA, *Stable Inv. Partnership v. Vilsack*, No. 12 C 5556, 2014 WL 1017032 (N.D. Ill. Mar. 17, 2014), and Stable appeals. We affirm.

**I.**

Stable was formed by Chicago attorneys Maynerd Steinberg (through a living trust) and Keith Parr in July 15, 2009. The following month, the partnership arranged to purchase some 86 acres of farmland in Livingston County from Raymond and Donna Adams through an Illinois land trust. The parties refer to the property as Farm Number 1222. Pursuant to a trust agreement with Heartland Bank & Trust Company ("Heartland"), Heartland would take title to the property as trustee. Stable, as the beneficiary of the trust,

would hold a personal property interest in "the earnings, avails and proceeds" of the trust; no beneficiary, be it Stable or any future beneficiary, would possess any other "right, title or interest in or to any portion of said real estate as such, either legal or equitable. …" R. 14-2 at 2. By its terms, the trust agreement was not to be filed with the County Recorder's office or otherwise placed in the public record.

The provisions of the trust agreement are typical of the Illinois land trust. This form of trust was created by the Illinois bar, with the aid and acceptance of the Illinois bench, in the nineteenth and early twentieth centuries. The trust is unique in the respective powers it assigns to the trustee and beneficiary. Pursuant to the land trust, the trustee holds both legal and equitable title to the trust property, whereas the beneficiary holds a special personal property interest in the trust proceeds. But, in contrast to the more traditional trust, the exclusive power to manage the trust assets belongs to the beneficiary rather than the trustee, including authority to direct the trustee in dealing with title to the property. Nominally, then, although the trustee as the titleholder is held out to the world as the owner of the property, it is the beneficiary who actually exercises the powers of ownership. The land trust holds a number of advantages for property owners. Principal among them are these: First, the identity of the trust beneficiaries is shielded from public knowledge; generally, one must resort to legal process in order to ascertain the identity of the beneficiaries. Second, interests in the property can be pledged, assigned, or sold more simply than with other forms of ownership. *See* 765 Ill. Comp. Stat. §§ 430/1, 405/1, 420/2; *Old Orchard Bank & Trust Co v. Rodriguez*, 654 F. Supp. 108, 110 (N.D. Ill. 1987);

*Klein v. LaSalle Nat'l Bank*, 613 N.E.2d 737, 740 (Ill. 1993), *abrogated on other grounds by People v. Vincent*, 871 N.E.2d 17 (Ill. 2007); *People v. Chicago Title & Trust Co.*, 389 N.E.2d 540, 543 (Ill. 1979); *Chicago Fed. Sav. & Loan Ass'n v. Cacciatore*, 185 N.E.2d 670, 674 (Ill. 1962); *Espevik v. Kaye*, 660 N.E.2d 1309, 1313-14 (Ill. App. Ct. 1996); *Smith v. First Nat'l Bank of Danville*, 624 N.E.2d 899, 909 (Ill. App. Ct. 1993); *Robinson v. Chicago Nat'l Bank*, 176 N.E.2d 659, 661 (Ill. App. Ct. 1961); Julius J. Zschau, Ulysses Clayborn, & Andrew M. O'Malley, *Using Land Trusts to Prevent Small Farmer Land Loss*, 44 REAL PROPERTY, TRUST & ESTATE L. J. 521, 540-43 (2009); Steven C. R. Brown, *Kill the Dummy: The Land Trust Alternative to the Nominee*, 19 CUMBERLAND L. REV. 241, 270-72 (1988/1989); Eric T. Freyfogle, *Land Trusts and the Decline of Mortgage Law*, 1988 U. ILL. L. REV. 67, 71-74 (1988).

On January 14, 2010, Stable, as the beneficiary of the trust, entered into an Illinois Crop Share Cash Farm Lease with Stanley Blunier, a farm operator. Under a crop share cash farm lease, a farm owner accepts a share in the proceeds of the crop that his tenant will produce in lieu of rent. Under the terms of the lease with Blunier, Stable assumed fifty percent of the risk of producing the crop, which we understand to mean that Stable agreed to share the potential losses and gains equally with Blunier.

During the time period relevant to this suit, a "producer" of certain agricultural commodities, including the crops cultivated on the farmland at issue here, was eligible for farm subsidies under the USDA's Direct and Counter Cyclical Program ("DCP"). The DCP was established by the Farm Security and Rural Investment Act of 2002, Pub. L. 107-171,

116 Stat. 134 (May 13, 2002), codified at 7 U.S.C. § 7901, *et seq.* (the "Act"), as a means of shielding farmers from the cyclical variations in crop prices by providing subsidies to the producers of certain agricultural commodities. The program was originally scheduled to expire in 2007, but was subsequently extended through 2013. A provision in the Agricultural Act of 2014, Pub. L. 113-79, 128 Stat. 649, 658 (Feb. 7, 2014), terminated the program.

The Act defines a "producer" to include "an owner, operator, landlord, tenant, or sharecropper that shares in the risk of producing a crop and is entitled to share in the crop available for marketing from the farm, or would have shared had the crop been produced." § 7901(12). Without doubt, Blunier, as the tenant farming the property, qualified as a producer eligible for DCP subsidies and did, in fact, apply for and receive such subsidies. Stable also sought subsidies, on the ground that as an "owner" of the property, which by virtue of the lease arrangement with Blunier shared in the risk of producing the crops, it likewise qualified as an eligible "producer." *See* 7 C.F.R. § 1412.42(a)(1). A regulation promulgated by the USDA pursuant to section 7901 supplies the following definition of the term "owner."

Owner means one who has legal ownership of farmland, including:

(1) Any agency of the Federal Government, however, such agency shall not be eligible to receive any payment … ;

   (2) One who is buying farmland under a contract for deed;

   (3) One who has a life-estate in the property; or

   (4) . . .

      (i)  One who has purchased a farm in a foreclosure proceeding; and

         (A) The redemption period has not passed; and

         (B)  The original owner has not redeemed the property.

    . . .

   (5) One who is an heir to property but cannot provide legal documentation to confirm ownership of the property, if such heir certifies to the ownership of the property and the certification is considered acceptable, as determined by the Deputy Administrator.

7 C.F.R. § 718.2. Stable maintains that it qualifies as an owner pursuant to this regulatory definition.

Two months after he entered the lease with Stable, Blunier enrolled Farm Number 1222 in the DCP subsidy program, identifying himself as the tenant with a fifty-percent share in the crop being cultivated and Stable as the owner of the farm with the other fifty-percent share. The Farm Service Agency ("FSA"), an agency of the USDA, managed that program. On March 30, 2010, the FSA approved Farm Number 1222 for enrollment in the 2010 DCP program. As DCP benefits were prorated based on the number of eligible recipients for each

farm and Blunier had indicated that he and Stable were sharing the risk of farming the property, the FSA requested that Stable submit documentation of its eligibility for DCP benefits as the "owner" of Farm Number 1222. The partnership submitted the appropriate paperwork.

On October 13, 2010, the FSA sent Stable a check in the amount of $448.00, representing the pro rata portion of benefits to which the partnership was entitled under the DCP program—or would be, assuming that Stable, as the beneficiary of the land trust, qualified as an "owner" of the property. Apparently the check was issued in error. Previously, government representatives had indicated to Stable that the trust as titleholder rather than the partnership as beneficiary constituted the owner of the land. The Livingston County office of the FSA had notified the partnership in August that it was ineligible for DCP benefits, as the trust "is technically the owner of the farm ground and Stable [Partnership] is the 100% beneficiary of the land trust." R. 12 ¶ 34; R. 14-2 at 32. Ed Brown, of the USDA, emphasized the same point in a September email to Steinberg: "Trust HBT-394 is the owner of the farm. … Stable holds the beneficial interest in Trust HBT-394, but they are not the owner of the farm." R. 14-2 at 26. In late October, the Livingston County FSA formally advised Stable that its application for DCP benefits was denied. The partnership pursued appeals to the County FSA Committee, the State FSA Committee, the USDA National Appeals Division, and finally to the office of the Director of the Appeals Division. All sustained the denial of DCP benefits to the partnership, noting that it was the trust itself, rather than the partnership as the beneficiary of that trust, which was the owner of the property.

The Director's office, whose ruling represents the final decision of the agency, deemed it reasonable for the FSA to conclude that the person or entity that holds title to the property is the "owner" for purposes of eligibility for benefits, given that the regulation defines "owner" as the person who has "legal ownership" of the property. R. 14-6 at 8. Having thus been found ineligible for DCP subsidies, Stable has been asked to return the $448 in benefits it received in October 2010.

Its administrative remedies exhausted, Stable filed suit in the district court contending that the agency's ruling denying it DCP benefits was both not in accordance with the law and arbitrary and capricious, *see* 5 U.S.C. § 704, 7 U.S.C. § 6999; the partnership sought declaratory relief recognizing that Stable, as the beneficiary of the land trust, is the owner of the property for purposes of the DCP program and any other federal benefits program. The district court granted summary judgment to the government, rejecting each of the three grounds on which Stable challenged the agency's decision. 2014 WL 1017032.

The court noted at the outset that a "legal owner" is generally considered to be "[o]ne recognized by law as the owner of something; esp[ecially], one who holds legal title to the property for the benefit of another," in contrast to the "beneficial owner," who is "recognized in equity as the owner of something because use and title belong to that person, even though legal title may belong to someone else, esp[ecially], one for whom property is held in trust." *Id.* at *3 (quoting BLACK'S LAW DICTIONARY (9th ed. 2009)). This suggested to the court that the trustee, and not the beneficiary, of the land trust was the legal owner of the farmland.

The court was not convinced that a land trust beneficiary qualifies as the owner of the farm property in view of the five specific situations that the regulation identifies as being "includ[ed]" in the class of owners entitled to benefits. To the court's mind, the five cited cases, some with express qualifications, comprised a varied list from which no clear unifying principle could be extracted. "To accept Stable's argument, we would have to articulate what this larger principle is exactly, which would effectively put this Court in the role of drafting a new FSA farm regulation." *Id.*, at *4. Consequently, the term "including" preceding the five cited cases was properly understood as a term of limitation rather than a term of enlargement.

Finally, although Stable represented that the FSA in practice allowed the beneficiary of a deed of trust – also unnamed in the regulation – to qualify as an owner, the court was not convinced that it was arbitrary and capricious not to also treat the beneficiary of an Illinois land trust as an owner. The court noted that the beneficiary of a deed of trust, in contrast to the beneficiary of an Illinois land trust, would appear in the chain of title; there would thus be no need to review private documents in order to confirm the beneficiary's status. It was therefore not arbitrary and capricious for the FSA to treat the two types of beneficiaries differently. "The FSA, overseeing a complex program of farm benefits, is entitled to some deference, and its stated concern for fraud and this additional concern for added time and expense [of identifying a beneficiary not disclosed in public documents] provide a reasonable justification." *Id.*, at *4.

## II.

Stable contends that, as the beneficiary of an Illinois land trust, it is an "owner" of the land for purposes of DCP benefits and that the USDA's conclusion to the contrary was in error. Although it is the trustee of the land trust who holds title to the farmland, it is the trust beneficiary who holds the power to control the land; this authority, in Stable's view, makes the beneficiary the owner in fact. In this regard, Stable contends that its situation is similar to the five ownership scenarios cited in the regulation, which Stable characterizes as variations of control without legal ownership of the land. Finally, Stable represents that the USDA in practice treats the beneficiary of a deed of trust as an owner; and Stable argues that because it is similarly situated, it too should be treated as an owner.

We review the district court's summary judgment decision de novo. *E.g.*, *Ripberger v. Corizon, Inc.*, — F.3d —, 2014 WL 6911665, at *4 (7th Cir. Dec. 10, 2014). As this is an action for review of final action taken by a federal administrative agency, *see* 5 U.S.C. §§ 702, 704, the ultimate question is whether that action is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law." *Id.* § 706(2). In answering that question, we rely on the same administrative record that was before the district court and render an independent judgment as to whether the agency acted unreasonably. *See St. Clair v. Secretary of the Navy*, 155 F.3d 848, 850-51 (7th Cir. 1998). As the foregoing summary of Stable's appellate arguments reveals, the central issue presented is whether the FSA erred when it determined that Stable is not an owner that is eligible for DCP benefits. It is the USDA's regulation that defines the term "owner" for this purpose. The agency was

authorized to promulgate the regulation pursuant to 7 U.S.C. § 7991(c), and there is no contention that the regulation is in some way inconsistent with the statute. Stable's quarrel, instead, is solely with the USDA's understanding of the regulation. We owe substantial deference to the agency's interpretation. *Abraham Lincoln Mem. Hosp. v. Sebelius*, 698 F.3d 536, 547 (7th Cir. 2012). "Our task is not to decide which among several competing interpretations best serves the regulatory purpose. Rather, the agency's interpretation must be given controlling weight unless is its plainly erroneous or inconsistent with the regulation." *Id.* (quoting *Thomas Jefferson Univ. v. Shalala*, 512 U.S. 504, 512, 114 S. Ct. 2381, 2386 (1994)). Stable's view is that the USDA's focus on who holds title to the property held by an Illinois land trust is not in accordance with the plain terms of section 718.2.

The regulation provides in the first instance that an owner of farmland is one who holds "legal ownership" of the land. The question is what the word "legal" is intended to signify in this context. As the district judge recognized, we presume that the qualifier "legal" was used to modify "ownership" in some way. 2014 WL 1017032, at *3; *see Loughrin v. United States*, 134 S. Ct. 2384, 2390 (2014); *Nat'l Ass'n of Home Builders v. Defenders of Wildlife*, 551 U.S. 644, 669, 127 S. Ct. 2518, 2536 (2007); *Duncan v. Walker*, 533 U.S. 167, 175, 121 S. Ct. 2120, 2126 (2001); *Walters v. Metro. Educ. Enters., Inc.*, 519 U.S. 202, 209, 117 S. Ct. 660, 664 (1997); *United States v. Menasche*, 348 U.S. 528, 538-39, 75 S. Ct. 513, 520 (1955). Stable implicitly construes "legal ownership" to mean actual or true ownership—or, put another way, a relationship to the land that the law would recognize as genuine ownership.

There are, indeed, any number of Illinois cases that in multiple contexts recognize the beneficiary of an Illinois land trust as the true owner of the land, notwithstanding the fact that it is the trustee who holds title, given that the power to direct the trustee and to possess and control the land resides with the beneficiary. *See Redfield v. Continental Cas. Corp.*, 818 F.2d 596, 607-09 (7th Cir. 1987) (insurance); *In re Gladstone Glen*, 628 F.2d 1015, 1018 (7th Cir. 1980) (bankruptcy); *People v. Chicago Title & Trust Co., supra*, 389 N.E.2d at 544-45 (federal estate taxes); *Matanky Realty Group, Inc. v. Katris*, 856 N.E.2d 579, 583 (Ill. App. Ct. 2006) (Illinois Mechanic's Lien Act); *Sajdak v. Sajdak*, 586 N.E.2d 716, 722-23 (Ill. App. Ct. 1992) (Illinois Joint Rights and Obligations Act); *IMM Acceptance Corp. v. First Nat'l Bank & Trust Co. of Evanston*, 499 N.E.2d 1012, 1015-16 (Ill. App. Ct. 1986) (Illinois Statute of Frauds); *Brazowski v. Chicago Title & Trust Co.*, 280 Ill. App. 293, 305 (Ill. App. Ct. 1935) (liability in tort for injuries sustained on land).

None of these cases, however, describe the land trust beneficiary's relationship to the land as *legal* ownership. More commonly, as the district court pointed out, legal ownership connotes the possession of legal title to the property, especially where, as here, one person or entity is holding title for the benefit of another. BLACK'S LAW DICTIONARY 280 (10th ed. 2014); *see* Margaret Hartley Healy, Illinois Real Property Service, *Land Trusts*, 5 Ill. Real Property §§ 31:103, 34:13 (updated Feb. 2014).[1] Thus, any number of Illinois cases refer

---

[1]   Stable points out that the regulation uses the phrase "legal owner*ship*" rather than "legal owner." But it never offers a convincing explanation why

(continued...)

to the trustee of a land trust as the legal owner of the property. *E.g., City of Naperville v. Old Second Nat'l Bank of Aurora*, 763 N.E.2d 951, 952 (Ill. App. Ct. 2002); *LaSalle Bank, N.I. v. First Am. Bank*, 736 N.E.2d 619, 625 (Ill. App. Ct. 2000); *Henstein v. Buschbach*, 618 N.E.2d 1042, 1044 (Ill. App. Ct. 1993); *Mid-City Nat'l Bank v. C.A. Hemphill & Assocs.*, 516 N.E.2d 460, 461 (Ill. App. Ct. 1987); *O'Hara v. Chicago Title & Trust Co.*, 450 N.E.2d 1183, 1184 (Ill. App. Ct. 1983); *LaSalle Nat'l Bank & Trust Co. v. Cook County*, 402 N.E.2d 687, 688 (Ill. App. Ct. 1980).

More to the point, our own decision in *Gladstone Glen* draws a distinction between ownership in fact, or genuine ownership, on the one hand, and legal ownership on the other. The issue in *Gladstone Glen* was whether the beneficiary of an Illinois land trust constituted a legal or equitable owner of the property in question, so as to qualify as a debtor who could file for bankruptcy. Given the beneficiary's broad powers of control, we held that the trust beneficiary should be deemed an equitable owner of the land. At the same time, we observed that the beneficiary is not the legal owner of the property:

> It is plain that Gladstone Glen is not the legal owner of the real property here. We understand "legal owner" to mean the owner of record, see *In re Spicewood Associates*, 445 F. Supp. 564, 569 (N.D. Ill. 1977), and the federal courts will look to and follow state law in determining whether the debtor is the legal owner. See, e.g., *Owners of "SW 8" Real Estate v.*

---

[1] (...continued)
we should attribute entirely different meanings to the two terms.

> *McQuaid*, 513 F.2d 558 (9th Cir. 1975). Here the legal
> title and legal ownership of the real property are
> vested in the trustee of the land trust, not the benefi-
> ciary. …

*Id.* at 1018. (As the Bankruptcy Code required only that the
party seeking bankruptcy be the legal *or* the equitable owner,
equitable ownership of the land was sufficient for the benefi-
ciary to qualify as debtor.)

Other cases have likewise distinguished between a land
trust beneficiary's practical ownership of the trust property
and the trustee's legal ownership of the property. *IMM
Acceptance Corp.*, 499 N.E.2d at 1015 (noting that whereas "true
ownership of the land lies with the beneficiary" of an Illinois
land trust, trustee's interest assumes significance in context of
relationships based on title); *Chicago Title & Trust Co.*, 389
N.E.2d at 544 ("Title refers only to a legal relationship to the
land, while ownership is comparable to control and denotes an
interest in the real estate other than that of holding title
thereto."); *Wheaton Coll. v. Dep't of Revenue*, 508 N.E.2d 1136,
1137 (Ill. App. Ct. 1987) (same); *Dep't of Conservation v. Franzen*,
356 N.E.2d 1245, 1249-50 (Ill. App. Ct. 1976) (noting that Illinois
law treats the land trust beneficiary as the real party in interest
with respect to issues involving management and control of the
land, but does not permit beneficiary to act as an owner with
respect to matters involving title to the land, where third
parties are likely to rely on the public record, which does not
disclose the beneficiary); *see also Sieron v. Hanover Fire & Cas.
Ins. Co.*, 485 F. Supp. 2d 962, 967 (S.D. Ill. 2007) (distinguishing

between use, possession, and control of land and ownership of record).

Collectively, these cases reinforce the district court's conclusion that insofar as an Illinois land trust is concerned, it is the trustee that holds legal ownership of the farmland. The general definition of "owner" supplied by the first line of section 718.2 thus suggests that Stable is not the owner of the property for purposes of DCP benefits. The FSA's understanding of the regulation thus was not plainly erroneous or inconsistent with its terms.

Stable fares no better with the five specific categories that the regulation deems "includ[ed]" within the universe of benefit-eligible "owners." None of the five categories includes the beneficiary of an Illinois land trust, but Stable argues, as it did below, that the five enumerated categories are merely illustrative, with room for the FSA—and, if necessary, a reviewing court—to add to the list. It is true, as Stable points out, that the term "include" often invites enlargement of the list that follows. *See Samantar v. Yousuf*, 560 U.S. 305, 317 & n.10, 130 S. Ct. 2278, 2287 & n.10 (2010); *United States v. Latham*, 754 F.2d 747, 750 (7th Cir. 1985). But this is not invariably true; the context of the term matters. *See id.* Here, as the district court recognized, the five categories named in section 718.2 comprise an "eclectic list without a clear conceptual principle linking them." 2014 WL 1017032, at *4. Some of the listed categories fit Stable's control-without-title moniker, although it is not clear that all do, including in particular land owned by a government agency. And some of those that do fit the description are qualified—namely, the purchaser of a farm in a foreclosure proceeding, and the heir to a farm who lacks legal

documentation confirming ownership. § 718.2 (4) & (5). The list thus reads more naturally as a discrete set of exceptions to the opening language of the regulation, which otherwise limits the class of landowners eligible for benefits to titleholders. Whatever the beneficiary of a land trust might have in common with one or more of the listed cases, we are not persuaded that it is obviously inconsistent with the regulation for the FSA not to look beyond the delineated scenarios and recognize additional non-titleholders as owners on a case-by-case basis.

Stable's final argument posits that the FSA in practice does recognize another category of non-titleholder as an owner, although it is not one of the five listed in the regulation. Stable represents that the FSA treats the beneficiary of a deed of trust—used in lieu of a mortgage in non-judicial foreclosure states—as an owner, although such a beneficiary, like the beneficiary of an Illinois land trust, does not hold title to the property (rather, the lender does). In Stable's view, if that type of beneficiary qualifies as an owner for purposes of DCP benefits, it is irrational for the FSA not to recognize the beneficiary of a land trust as an eligible owner. The district court, although it rejected the contention, described this as Stable's best argument. 2014 WL 1017032, at *4.

The first problem with the argument is the lack of evidence substantiating Stable's representation that the FSA recognizes the beneficiary of a deed of trust as an owner for purposes of section 718.2.[2] The government does not concede the existence

---

[2]   The only documentation in the record on this point is a two-page *Wikipedia* entry describing what trust deeds are (R. 14-13 at 22-23); we can

(continued...)

of the practice Stable describes. *See* Gov't Br. 24-25. If, in fact, the FSA does treat the beneficiary of a deed of trust as an owner, then it should not be difficult for Stable to document that practice. Instead, the government's argument about the lack of substantiation is passed over in silence by Stable's reply brief in this court.

Second, as the district court reasoned, it would not be arbitrary and capricious for the FSA to draw a distinction between the beneficiary of a deed of trust and the beneficiary of an Illinois land trust. Unlike the latter, the beneficiary of a trust deed will appear in the chain of title, supplying the agency with a ready means of verifying the beneficiary's status. There is therefore no need to review and interpret private documents, such as the trust agreement between Stable and the bank, in order to verify who is the real owner of the property. (Nor, assuming that Stable is correct in asserting that its status will be revealed elsewhere—in tax records, for example—is there a need for the USDA to search for and evaluate the significance of such records.) As the district court reasoned, it is entirely rational for an agency administering a large program to restrict benefits to those whose eligibility it can most easily verify.

---

[2] (...continued)
find no evidence that the FSA recognizes the beneficiary of a trust deed as an owner. For its part, the USDA has acknowledged only that Stable made this argument before the USDA's National Appeals Division, not that the factual premise of the argument is correct. R. 12 (Answer to the Complaint) ¶ 54; R. 25 (Response to Plaintiff's Statement of Material Facts) ¶ 42.

### III.

The FSA's decision to deny DCP benefits to Stable was neither contrary to the terms of section 718.2 nor arbitrary and capricious. Because Stable does not possess legal ownership of the farmland in question, it was not eligible for benefits under the terms of the regulation. We therefore AFFIRM the district court's judgment.