PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

────────────

No. 12-4047

────────────

In re: LAZY DAYS' RV CENTER INC., et al,

Reorganized Debtors


Lazy Days' RV Center, Inc. and LDRV Holdings Corp.,

Appellants

────────────

On Appeal from the United States District Court
for the District of Delaware
(D.C. No. 11-cv-00626)
District Judge:  Honorable Richard G. Andrews

────────────

Argued June 13, 2013
Before:  SCIRICA, HARDIMAN and
ALDISERT, *Circuit Judges*.

(Filed: July 30, 2013)

Peter J. Rusthoven [ARGUED]
Barnes & Thornburg
11 South Meridian Street
Indianapolis, IN 46204

Maris J. Kandestin
Edmon L. Morton
Young, Conaway, Stargatt & Taylor
1000 North King Street
Rodney Square
Wilmington, DE 19801
        *Attorneys for Appellants*

R. Craig Martin [ARGUED]
Stuart M. Brown
DLA Piper
919 North Market Street
Suite 1500
Wilmington, DE 19801

Ronald S. Holliday
DLA Piper
Suite 2200
100 North Tampa
Suite 2200
Tampa, FL 33602-5809

Andrew Zaron
Suite 2300
200 South Biscayne Boulevard
Miami, FL 33131
        *Attorneys for Appellee*

_____

OPINION OF THE COURT

_____

HARDIMAN, *Circuit Judge*.

Lazy Days' R.V. Center, Inc. and LDRV Holding Corp. (collectively, the Reorganized Debtors) appeal an order of the United States District Court for the District of Delaware that vacated an order of the United States Bankruptcy Court. According to the District Court, the Bankruptcy Court lacked jurisdiction to adjudicate the motion to reopen filed by the Reorganized Debtors. Because we disagree with the District Court's conclusion that the Bankruptcy Court issued an advisory opinion, we will reverse the judgment of the District Court.

I

Appellee I-4 Land Holding Limited Co. owns a parcel of land in Florida. In July 1999, I-4 leased that land to Lazy Days pursuant to a written lease (Lease) that gave Lazy Days an option to purchase the property subject to certain conditions not relevant here. The Lease also prohibited Lazy Days from "assign[ing] or transfer[ring]" its interest in the Lease "without the prior written consent of" I-4, except to related entities under certain circumstances. App. 1249. Beginning in 2008, Lazy Days failed to pay rent as it came due and informed I-4 of its intention to file for Chapter 11 bankruptcy and assign the Lease to LDRV.

Prior to filing a petition under Chapter 11, Lazy Days negotiated with I-4 and reached a settlement agreement in

3

October 2009 (the Settlement Agreement), pursuant to which I-4 consented to Lazy Days's assignment of the Lease to LDRV. As part of the Settlement Agreement, Lazy Days agreed not to "argue against the Bankruptcy Court abstaining from consideration of Lease interpretation issues . . . except to the extent necessary in connection with the assumption and assignment of the Lease as contemplated herein." App. 1485. The Settlement Agreement also provided that "there is no intent to, nor is the Lease modified in any respect and the Lease and all terms and conditions thereof remain in full force and effect." App. 1487. It did not explicitly state whether the purchase option would survive, however.

In November 2009, Lazy Days filed a Chapter 11 petition. The Bankruptcy Court confirmed a reorganization plan incorporating the Settlement Agreement in December 2009 and closed the case in March 2010. Thereafter, the Lease was assigned to LDRV.

On May 12, 2011, LDRV attempted to exercise the purchase option, but I-4 refused to honor it. On June 1 and June 7, 2011, the parties each filed lawsuits in Florida state court seeking a determination of their respective rights under the Lease. Also on June 7, the Reorganized Debtors filed an emergency motion to reopen in the Bankruptcy Court, seeking a ruling that the Lease's anti-assignment provision was unenforceable pursuant to 11 U.S.C. § 365(f)(3), which renders unenforceable any "provision in an . . . unexpired lease of the debtor . . . that terminates or modifies . . . a right . . . under such . . . lease on account of an assignment" of the lease. Nine days later, after allowing I-4 to file an opposition and holding a hearing, the Bankruptcy Court held that the anti-assignment provision was unenforceable and that I-4's refusal to honor the purchase option violated the Settlement

4

Agreement. The Bankruptcy Court then ordered I-4 to honor the option.

I-4 appealed to the District Court, which vacated the Bankruptcy Court's order, holding that the Bankruptcy Court's judgment was an advisory opinion directed at the Florida state courts. The Reorganized Debtors now appeal.

## II

The Reorganized Debtors invoked the Bankruptcy Court's jurisdiction under 11 U.S.C. § 350(b). The District Court had jurisdiction over the appeal of the Bankruptcy Court's decision under 28 U.S.C. § 158(a), and we have jurisdiction pursuant to 28 U.S.C. §§ 158(d) and 1291. In reviewing the Bankruptcy Court proceedings, we apply the same standard as the District Court. Accordingly, we review the Bankruptcy Court's legal determinations de novo, its findings of historical fact for clear error, and its decision to reopen for abuse of discretion. *See In re Zinchiak*, 406 F.3d 214, 221–22 (3d Cir. 2005).

## III

We first consider whether the Bankruptcy Court had jurisdiction to reopen the proceedings. The District Court held that the Bankruptcy Court lacked jurisdiction because the Bankruptcy Court issued an advisory opinion. In addition to the District Court's holding, I-4 offers alternative grounds for affirmance. In I-4's view, the Bankruptcy Court lacked statutory subject matter jurisdiction and constitutional authority to reopen the case and it was required to abstain under 28 U.S.C. § 1334(c). We will address these three arguments *seriatim*.

A

Federal courts have no jurisdiction to render advisory opinions. Put another way, they "may not decide questions that cannot affect the rights of litigants in the case before them or give opinions advising what the law would be upon a hypothetical state of facts." *Chafin v. Chafin*, 133 S. Ct. 1017, 1023 (2013) (citation, internal quotation marks, and alteration omitted). In this case, the Bankruptcy Court issued a two-page decree, declaring the anti-assignment clause invalid and ordering I-4 to honor the purchase option. Because this decree actually invalidated the anti-assignment clause and ordered the parties to do something, it "affect[ed] the rights of litigants," *id.*, and was not an advisory opinion. *See In re McDonald*, 205 F.3d 606, 609 (3d Cir. 2000) (bankruptcy court opinion was not advisory when it "resolved the litigation").

Relying on the opinion of a panel of this Court in *In re Martin's Aquarium, Inc.*, 98 F. App'x 911 (3d Cir. 2004), I-4 argues that the Bankruptcy Court issued an advisory opinion because the Reorganized Debtors sought the Bankruptcy Court's judgment in order to influence the state proceedings. Apart from the fact that it has no precedential value, *Martin's Aquarium* is easily distinguishable from this case. There, the Bankruptcy Court issued a judgment that was entered in the Pennsylvania state courts. *Id.* at 912. One party filed motions to stay execution claiming that the judgments were fraudulently entered. *Id.* While those motions were pending in state court, the other party moved to reopen in the bankruptcy court "for the purpose of seeking confirmation of the Judgment." *Id.* (internal quotation marks and alteration omitted). The bankruptcy court acknowledged that "the underlying dispute centers around the interpretation of

6

Pennsylvania law, not federal bankruptcy law," yet agreed to reopen "for the limited purpose of ruling that [its earlier order] was a judgment within the meaning of Federal Rule of Civil Procedure 54(a)." *Id.* at 912 (internal quotation marks omitted). The bankruptcy court's opinion that its earlier judgment was a judgment under the Federal Rules of Civil Procedure did nothing to resolve whether the Pennsylvania courts would be required to abide by it under Pennsylvania procedural rules. Thus, the opinion had no legal effect; it was merely advisory.

Unlike in *Martin's Aquarium*, here the Bankruptcy Court's order had the legal effect of voiding the anti-assignment clause. Thus, its opinion was not advisory, regardless of whether the Reorganized Debtors sought to impact the state proceedings. *See Matter of Shondel*, 950 F.2d 1301, 1309 (7th Cir. 1991) (bankruptcy court decision modifying its previous injunction to allow a wrongful death claimant to proceed in state court against a bankrupt estate "gave actual relief" and was therefore not advisory); *cf. Travelers Indem. Co. v. Bailey*, 557 U.S. 137, 143, 151 (2009) (bankruptcy court had jurisdiction "to enjoin 26 Direct Actions pending in state courts" when those actions violated its order). Accordingly, even were we inclined to follow *Martin's Aquarium* in this appeal, it would be unavailing to I-4.

B

Having determined that the Bankruptcy Court did not issue an advisory opinion, we next address I-4's contention that the Bankruptcy Court lacked statutory subject matter jurisdiction over the motion to reopen.

7

As a preliminary matter, we note that the question of whether the Bankruptcy Court had jurisdiction to confirm the reorganization plan that included the Settlement Agreement in the first place is not before us, as no party challenged the Bankruptcy Court's jurisdiction over that proceeding. *See Travelers*, 557 U.S. at 148, 151–52 ("Once the [initial orders] became final on direct review (whether or not proper exercises of bankruptcy court jurisdiction and power), they became res judicata to the parties and . . . even subject-matter jurisdiction may not be attacked collaterally." (internal quotation marks and alterations omitted)). Thus, "the only question left is whether the Bankruptcy Court had subject-matter jurisdiction to enter the" 2011 order that is the subject of this appeal. *See id.* at 151.

Under 11 U.S.C. § 350(b), a bankruptcy court may reopen a closed case "to administer assets, to accord relief to the debtor, or for other cause." We have interpreted § 350(b) to give "bankruptcy courts . . . broad discretion to reopen cases after an estate has been administered." *Zinchiak*, 406 F.3d at 223. "In exercising its discretion to reopen, a bankruptcy court should consider whether similar proceedings are already pending in state court as well as make a determination as to which forum—state court or bankruptcy court—is most appropriate to adjudicate the issues raised by a motion to reopen." *See id.* at 225. In *Zinchiak*, we found that a bankruptcy court had jurisdiction under § 350(b) to reopen a proceeding to determine whether "the filing of a deficiency petition . . . was encompassed within, and thus barred by, the automatic stay" the bankruptcy court had modified in an earlier issued order. *Id.* at 223–24. We noted that this issue was "properly to be decided by the Bankruptcy Court after reopening" because the bankruptcy

8

court was "well suited to provide the best interpretation of its own order." *Id.* at 224 (internal quotation marks omitted). We reached this conclusion even though "several related deficiency actions were pending in Pennsylvania state courts." *Id.* at 225.

As in *Zinchiak*, here the Bankruptcy Court was asked to reopen proceedings to resolve a dispute regarding the Settlement Agreement it had previously confirmed. And because the Bankruptcy Court here was "well suited to provide the best interpretation of its own order," *id.* at 224, it had jurisdiction to reopen. *See Travelers*, 557 U.S. at 151 ("[T]he only question left is whether the Bankruptcy Court had subject-matter jurisdiction to enter the Clarifying Order. The answer here is easy: . . . the Bankruptcy Court plainly had jurisdiction to interpret and enforce its own prior orders.").

C

Relying on three Supreme Court decisions, I-4 next argues that the Bankruptcy Court unconstitutionally asserted subject matter jurisdiction over a private rights dispute. *See Stern v. Marshall*, 131 S. Ct. 2594 (2011); *Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33 (1989); *N. Pipeline Const. Co. v. Marathon Pipe Line Co.*, 458 U.S. 50 (1982). But all three of those cases dealt with the difficult question of when a bankruptcy court may constitutionally exercise jurisdiction over common law claims. *See Stern*, 131 S. Ct. at 2611 (bankruptcy court lacked constitutional authority to "resolve and enter final judgment on a state common law claim"); *Granfinanciera*, 492 U.S. at 55–56 (bankruptcy court lacked jurisdiction to adjudicate a fraudulent conveyance claim by a bankruptcy trustee against a third party because fraudulent

transfer claims "are quintessentially suits at common law that more nearly resemble state-law contract claims brought by a bankrupt corporation to augment the bankruptcy estate than they do creditors' hierarchically ordered claims to a pro rata share of the bankruptcy res"); *N. Pipeline*, 458 U.S. at 90 (Rehnquist, J., concurring) (bankrupt debtor sued a third party for "breach of contract, misrepresentation, and other counts which are the stuff of the traditional actions at common law tried by the courts at Westminster in 1789").

By contrast, the Bankruptcy Court in this case did not decide a question of state common law, but rather determined whether, in light of 11 U.S.C. § 365(f)(3), an anti-assignment clause survived the Settlement Agreement it had confirmed as part of a Chapter 11 bankruptcy. Here, the Reorganized Debtors' claim for relief was based on a federal bankruptcy law provision with no common law analogue, so the *Stern* line of cases is plainly inapposite. *See, e.g.*, *Travelers*, 557 U.S. 137 (a pre-*Stern* case deciding a bankruptcy court's jurisdiction to enjoin state law actions without citing either *Granfinanciera* or *Northern Pipeline*).

### D

Finally, I-4 argues that the Bankruptcy Court was required to abstain under 28 U.S.C. § 1334(c)(2), which requires abstention from certain "proceeding[s] based upon a State law claim or State law cause of action, related to a case under title 11 but not arising under title 11 or arising in a case under title 11." As we noted already, although this proceeding may have been provoked by state court actions and surely impacted them, the proceeding in the Bankruptcy Court was founded upon a quintessentially federal claim, *viz.*, whether the anti-assignment clause was invalid under 11

10

U.S.C. § 365(f)(3). Furthermore, this dispute "aris[es] in a case under title 11" as the Bankruptcy Court was asked to interpret and enforce a reorganization plan which was entered as part of Lazy Days's Chapter 11 bankruptcy.

I-4's argument that the Reorganized Debtors agreed not to argue against abstention is also unavailing. The Settlement Agreement provided that the Reorganized Debtors would not argue against abstention "except to the extent necessary in connection with the assumption and assignment of the Lease as contemplated herein." App. 1485. That exception plainly applies because this proceeding was brought "in connection with the . . . assignment of the Lease."

### III

Having concluded that the Bankruptcy Court properly exercised jurisdiction over this dispute, we now address I-4's challenges to the Bankruptcy Court's order on the merits. In particular, I-4 argues that: (1) the parties agreed to waive the application of 11 U.S.C. § 365(f)(3) in the Settlement Agreement; (2) the Bankruptcy Court committed a taking under the Fifth Amendment; and (3) the Bankruptcy Court denied I-4 due process. We are unpersuaded by any of these arguments.

### A

I-4's first argument is premised on the claim that "the unambiguous plain language of the Settlement Agreement result[ed] in the elimination of the Purchase Option." I-4 Br. 50. However, the section of the Settlement Agreement I-4 cites provides merely that LDRV "agrees that it shall remain liable for all obligations on the Lease, after assignment."

App. 1480. Another section of the Settlement Agreement states that "[e]xcept as otherwise provided in this Agreement, there is no intent to, nor is the Lease modified in any respect and the Lease and all terms and conditions thereof remain in full force and effect." App. 1487. Even assuming *arguendo* that the parties may waive the protections of § 365(f)(3), neither of these provisions unambiguously eliminates the purchase option, as both could be read to mean that LDRV steps into Lazy Days's shoes and acquires all the rights and obligations that Lazy Days had, notwithstanding any anti-assignment provisions.

Our reading of the Settlement Agreement is buttressed by two factors. First, one of its essential purposes was for I-4 to consent to the assignment of the Lease. To that end, I-4 agreed to "hereby waive the asserted defaults of Tenant consenting to the commencement of a bankruptcy and the contemplated assignment of the Lease without notice to the Landlord and Landlord's written consent." App. 1480. This provision is most naturally read to give LDRV the same rights in the Lease that Lazy Days had, including the purchase option. Second, the principle established by § 365(f)(3) is that anti-assignment clauses are unenforceable in bankruptcy. As "contracts . . . are enacted against a background of common-sense understandings and legal principles that the parties may not have bothered to incorporate expressly but that operate as default rules to govern in the absence of a clear expression of the parties' intent that they not govern," *Wal-Mart Stores, Inc. Assocs.' Health & Welfare Plan v. Wells*, 213 F.3d 398, 402 (7th Cir. 2000), we do not read the Settlement Agreement to waive § 365(f)(3).

I-4 also argues that the Reorganized Debtors waited too long to seek to void the anti-assignment clause, and that

12

the Bankruptcy Court impermissibly modified the Settlement Agreement after it had been substantially consummated. These two arguments fail for the same reason. Because the Reorganized Debtors could have reasonably read the purchase option to survive the Settlement Agreement, they would have had no reason to sue to enforce the option until I-4 actually decided not to honor it. Soon after I-4 refused to honor the purchase option, the Reorganized Debtors brought suit to vindicate their rights. Likewise, the Bankruptcy Court did not modify the Settlement Agreement, but only clarified that it did not void that option.

B

I-4 next argues that the Bankruptcy Court's order was a taking under the Fifth Amendment. We disagree. The Bankruptcy Court did not take any of I-4's established property rights, but rather adjudicated the parties' bona fide dispute regarding their rights under the Settlement Agreement. This sort of adjudication of disputed and competing claims cannot be a taking. *See Stop the Beach Renourishment, Inc. v. Fla. Dep't. of Env't Prot.*, 130 S. Ct. 2592, 2612–13 (2010) ("The Takings Clause only protects property rights as they are established . . . , not as they might have been established or ought to have been established.").

C

Finally, I-4 argues that the Bankruptcy Court violated its due process rights by not allowing it to "present its case in a meaningful way" and "address[] the effect of Bankruptcy Code § 365 in the context of the consensual assignment of the Lease." I-4 Br. 58. In particular, I-4 argues that, under Federal Rule of Bankruptcy Procedure 7001, the Bankruptcy

Court should have held an adversary proceeding to determine the enforceability of the anti-assignment clause rather than proceeding by motion.

As for I-4's more general due process argument, the record shows that I-4 was able to present its case—it filed a lengthy opposition to LDRV's motion for reopening, and the Bankruptcy Court conducted a hearing with oral argument on that motion.

I-4's specific challenge based on Federal Rule of Bankruptcy Procedure 7001 is also unpersuasive. Although that rule provides that "a proceeding to determine the validity, priority, or extent of a lien or other interest in property" must be an "adversary proceeding" subject to the procedural rules in Part VII of the Rules of Bankruptcy Procedure as a general matter, Fed. R. Bankr. P. 7001(2), this case is different because the Bankruptcy Court was only adjudicating a motion to reopen in order to interpret and enforce its existing prior order. This procedural posture renders many of the requirements of an adversary proceeding (such as a formal complaint and service of process) superfluous. As explained by one bankruptcy court:

> While it is true as a general proposition that a claim to recover money or property or to obtain an injunction or other equitable relief must be brought as an adversary proceeding, that general rule is not applicable to this case. In this case, the Debtors are merely seeking to enforce an order already in place. The case was originally brought by the Debtors as an adversary proceeding. The adversary proceeding was resolved by a Settlement

14

> Agreement pursuant to which we issued the order the Debtors now seek to enforce. Thus, we conclude that an adversary proceeding is not necessary where the relief sought is the enforcement of an order previously obtained.

*In re WorldCorp, Inc.*, 252 B.R. 890, 895 (Bankr. D. Del. 2000). And although we have not previously said so, the Fourth Circuit has held that adversary proceedings are not required for motions to reopen. *See In re Collins*, 173 F.3d 924, 929 (4th Cir. 1999) ("An adversary proceeding . . . is not required to reopen a case because the bankruptcy court's power to reopen flows from its jurisdiction over debtors and their estates."); *see also In re Ellett*, 254 F.3d 1135, 1140 (9th Cir. 2001). We now join that court and hold that an adversary proceeding is not required for a bankruptcy court to reopen a case.

## IV

For the foregoing reasons, we will reverse the judgment of the District Court and remand the case.