**In re MICHAEL BAHARY & STEVEN BAHARY PARTNERSHIP,**
**Reorganized Debtor.**

No. 11 B 41826.

United States Bankruptcy Court,
N.D. Illinois,
Eastern Division.

Signed Jan. 13, 2015.

Robert R. Benjamin, Beverly A. Berneman, Anthony J. D'Agostino, Barbara L. Yong, Golan & Christie LLP, Caran A. Lederer, Chicago, IL, for Debtor.

**Order on Motion For Relief From Judgment (Dkt. No. 418)**

JACQUELINE P. COX, Bankruptcy Judge.

On December 29, 2014, this Court granted the Motion of the Reorganized Debtor, the Michael Bahary & Steven Bahary Partnership (the "Bahary Partnership" and the "Debtor"), for a Rule to Show Cause requiring Napleton Enterprises, LLC and Rachael A. Gould to show cause why they should not be held in contempt for suing the Bahary Partnership and Banco Popular to enforce Napleton's purported Right of First Refusal in a state court action regarding transactions that ensued in this bankruptcy case in 2012. *See* Order on Motion to Reopen and For Rule to

Show Cause at Case 11–41826, Docket Number 417.

On or before February, 2004, Napleton Enterprises, LLC ("Napleton") was the beneficial owner of real estate commonly known as 334 Grand Avenue, Elmhurst, Illinois ("the Grand Avenue Property"). In 2004, title to the Grand Avenue Property was held in trust; Standard Bank and Trust Company was the trustee. On February 24, 2004, Napleton Enterprises, LLC, not the trustee, entered into an agreement ("Sale Agreement") to sell the Grand Avenue Property to Windy City Auto Group Corporation. Paragraph R–4 of that agreement provided the Seller, the land trust, a Right of First Refusal:

> Seller is hereby granted a right of first refusal with respect to the subject property and/or any business owned by Purchaser and operating within the subject premises and/or any assets located thereon (the "Sale Property") only as follows:
>
> A. If purchaser desires to sell the Sale Property or any part thereof and received from some third party a bona fide offer for the purchase thereof Purchaser shall disclose the terms of such offer to Seller, in writing, within five (5) days following the receipt of the offer by Purchaser.
>
> B. Seller shall have seven (7) days after receiving notice of the terms of the offer within which to elect to exercise his right to purchase the Sale Property on the identical terms to those offered by the third party. In the event Seller fails to notify Purchaser in writing of its ·election to exercise such right within said time Seller shall have waived such right and no further obligations shall be required.
>
> C. Seller's right of first refusal shall extinguish upon the 1st sale to any third party bona fide purchaser for value or upon the leasing of the subject property. [initials of apparent party representatives]
>
> D. Purchaser shall not be required to provide notice and Seller's right of first refusal shall extinguish upon the sale to either of the Purchasers, their spouses, children, relatives, heirs successors and/or assigns. [initials of apparent party representative]
>
> E. Notice under the term of this right of first refusal shall be made by personal delivery of such notice or upon the mailing of said notice by regular mail to the address on the original contract of the parties hereto and the party's respective attorney so stated on said original contract. Notice shall be deemed effective one (1) day after mailing.

Ex. A, Rider B, R–4 (strikeouts manual in original; **bold** in original).

According to Napleton's Verified Complaint in Chancery for Equitable Relief and Damages filed on June 30, 2014, in the Circuit Court of the Eighteenth Judicial Circuit, DuPage County, Illinois, case number 2014 CH 001212, Napleton conveyed the Grand Avenue Property to the Bahary Partnership (as a nominee of Windy City Auto Group Corporation) by deed executed by the land trust on April 19, 2004. Banco Popular provided Bahary Partnership with a loan for the purchase of the Grand Avenue Property. In exchange the Bahary Partnership granted Banco Popular a mortgage on the property.

On January 20, 2006, Napleton recorded a Memorandum of its Right of First Refusal with the DuPage County Recorder of Deeds.

Following the Partnership's default on its loan obligations, Banco Popular filed a foreclosure case against the Bahary Part-

nership in 2010 in the DuPage County, Illinois Court; the case number is 2010 CH 004918.

The Micheal Bahary & Steven Bahary Partnership sought relief under chapter 11 of the Bankruptcy Code on October 14, 2011. Banco Popular's foreclosure case was stayed by the automatic stay of section 362 of the Bankruptcy Code.

On August 21, 2012, this Court entered an Order confirming the Debtor's Second Amended Plan of Reorganization (the "Plan") dated June 14, 2012. Case 11–41826, Docket No. 349. The Plan provided, in part, that the Reorganized Debtor would surrender the Grand Avenue Property to Banco Popular by executing a Deed in Lieu of Foreclosure to satisfy Banco Popular's secured claim. *See* Article IV of the Debtor's Second Amended Plan of Reorganization, section 4.01, Treatment of Claims and Interests Under the Plan, Class 1B, Secured Claims–Surrender of Properties. Case Number 11–41826, Docket Number 310, p. 4.

The Plan also provides, at paragraph 7.02, that all executory contracts not expressly assumed under paragraph 7.01 will be deemed to have been rejected by the Debtor, the Bahary Partnership. The Napleton interest/contract was not assumed under ¶ 7.01. If Napleton had an executory contract it has been rejected.

According to the Motion to Reopen, ¶ 12, on May 6, 2014, Banco Popular recorded the Deed in Lieu of Foreclosure, terminating the Debtor's rights in the property. Napleton's DuPage County lawsuit was filed soon thereafter, on June 30, 2014. Napleton's position is that its Right of First Refusal is an executory contract that survived confirmation of the Plan because its claim was not scheduled therein by the Debtor and it did not get notice of the bankruptcy case. Napleton also asserts that the Deed in Lieu of Foreclosure was a "bona fide" offer that gave it a basis to exercise its Right of First Refusal. In the December 29, 2014 Order, the Court held that the Right of First Refusal is not a property interest or claim and that it was not an executory contract that the Bahary Partnership had to assume or reject under 11 U.S.C. § 365. The Court further held that the Debtor's failure to assume Napleton's interest did not leave Napleton's interest intact and capable of being enforced in state court. The Court reopened this case on October 7, 2014. Napleton now requests relief from this Court's Order entered December 29, 2014 under Federal Rule of Bankruptcy Procedure 9024. For the reasons that follow, the Motion is DENIED.

## I. Jurisdiction

This Court has jurisdiction to hear this matter pursuant to 28 U.S.C. § 1334(a) which provides that the district courts have original and exclusive jurisdiction of all cases under title 11 of the United States Code, the Bankruptcy Code. 28 U.S.C. § 157(a) allows the district courts to refer title 11 cases to the bankruptcy judges for their districts. The District Court for the Northern District of Illinois has promulgated Internal Operating Procedure 15(a), which refers its bankruptcy cases to the judges of this Court.

As allowed by 28 U.S.C. § 157(b)(1), a bankruptcy judge to whom a case has been referred may enter final judgment on core proceedings arising in or under the Bankruptcy Code. "Arising under" jurisdiction covers matters for which a claim is made under a provision of the Bankruptcy Code, such as claims for violation of the automatic stay under 11 U.S.C. § 362(k)(1). "Arising in" jurisdiction covers matters that are not based on any right expressly created by title 11, but nevertheless, would have no existence outside of the bankruptcy, such

as motions for the turnover of property of the bankruptcy estate, and motions to appoint or elect trustees under 11 U.S.C. § 1104. *See Matter of Wood,* 825 F.2d 90, 96–97 (5th Cir.1987).

Core proceedings include those concerning plan confirmation, the liquidation of the assets of the estate, and the adjustment of the debtor-creditor relationship. 28 U.S.C. § 157(b)(2)(L) and (O). The issue to be determined herein is the scope and effect of this Court's August 21, 2012 Confirmation Order on Napleton Enterprises, LLC's Right of First Refusal: should it have been rejected or assumed under section 365 of the Bankruptcy Code and whether it survives the reorganization of the Debtor herein to such an extent that it can be enforced in state court. Resolution of these issues involves interpretation of this Court's Order confirming the Second Amended Plan of Reorganization.

 Proceedings that do not arise in a bankruptcy case or under title 11 but are otherwise related to a bankruptcy case are noncore proceedings. In *Stern v. Marshall,* the Supreme Court held unconstitutional bankruptcy court jurisdiction over certain counterclaims based on state law. A bankruptcy judge may hear noncore matters, but absent consent of the parties, may only "submit proposed findings of fact and conclusions of law to the district court, and any final order or judgment shall be entered by the district court after considering the bankruptcy judge's proposed findings and conclusions and after reviewing de novo those matters to which any party has timely and specifically objected." *Stern v. Marshall,* —— U.S. ——, 131 S.Ct. 2594, 2604–05, 180 L.Ed.2d 475 (2011); 28 U.S.C. § 157(c)(1).

 The test for determining whether a civil proceeding is related to a bankruptcy case is whether its outcome could conceivably have any effect on the estate being administered in bankruptcy. *In re Greektown Holdings, LLC.,* 728 F.3d 567, 577 (6th Cir.2013). In *In re Xonics,* 813 F.2d 127, 130 (7th Cir.1987), the Seventh Circuit ruled that "[a] non-core proceeding is related to a bankruptcy case only when it affects the amount of property available for distribution or the allocation of property among creditors."

Complicating this matter even more is that this request for relief was initiated post-confirmation. In *Greektown,* the Sixth Circuit explained that a bankruptcy court's "related to" jurisdiction could be diminished post-confirmation and required that jurisdiction inquiries turn on whether the outcome of the claims would affect the bankruptcy estate. Noncore "related to" jurisdiction could be invoked herein as this court is called on to determine whether Napleton had a property interest that should have been honored by allowing it to purchase a secured creditor's collateral. Was Banco Popular a bona fide third party purchaser who could purchase the property in issue only if Napleton did not timely outbid it?

A similar situation was addressed by the Third Circuit Court of Appeals in *In re Lazy Days' RV Center, Inc.,* 724 F.3d 418 (3rd Cir.2013). There the bankruptcy court reopened a chapter 11 debtor's case post-confirmation, and declared that an anti-assignment clause included in the debtor's lease was unenforceable. A district court reversed the bankruptcy court, finding that the bankruptcy court lacked jurisdiction and that its order was advisory. *See In re Lazy Days' RV Center, Inc.,* 2012 WL 4364257, at *2 (D.Del.2012). The Third Circuit reversed the district court. Debtor Lazy Days' and its lessor agreed prepetition that in the debtor's anticipated chapter 11 case their lease would be assumed and assigned to a certain entity. The bankruptcy court confirmed a plan

that incorporated that agreement and closed the case. The lease was assigned. However, when the assignee attempted to exercise the lease's purchase option the lessor refused to let the assignee purchase the interest in issue. As in the matter at issue herein, lawsuits were filed by each party in state court. Debtor Lazy Days' filed an emergency motion to reopen the bankruptcy case seeking a ruling that the lease's anti-assignment provision was not enforceable pursuant to 11 U.S.C. § 365(f)(3), which generally renders unenforceable any provision in an unexpired lease of a debtor that terminates or modifies a debtor's right to assign it.

The lessor asserted as an alternative ground in opposition to the bankruptcy court's ruling that it unconstitutionally asserted subject matter jurisdiction over a private rights dispute.

The Third Circuit discussed the principle that federal courts lack authority to render advisory opinions on "what the law would be upon a hypothetical state of facts." 724 F.3d at 421. The court ruled that because the bankruptcy judge issued a decree that invalidated the lease's "antiassignment clause and ordered the parties to do something, it 'affected the rights of litigants,' and was not an advisory opinion." *Id.* (citing *In re McDonald,* 205 F.3d 606, 609 (3d Cir.2000)); *see also Matter of Shondel,* 950 F.2d 1301, 1309 (7th Cir.1991) (bankruptcy court opinion modifying its previous injunction to allow a wrongful death claimant to proceed in state court against a bankruptcy estate affected the legal rights of the parties and was a "case" within the meaning of Article III and was therefore not an advisory opinion). The Third Circuit rejected the lessor's reliance on *Stern v. Marshall* for its position that the bankruptcy court lacked subject matter jurisdiction; it held that the bankruptcy court did not decide a question of state

common law, but determined whether, in light of 11 U.S.C. § 365(f)(3), an anti-assignment clause survived the settlement agreement it had confirmed as part of a chapter 11 case.

This Court found in *In re Brown's Chicken & Pasta, Inc.,* 503 B.R. 86, 89 (Bankr.N.D.Ill.2013) that it had authority to determine the scope and effect of its prior confirmation order in a situation where the Court was called on to decide what property had been sold in a sale conducted under section 363 of the Bankruptcy Code. This matter involves similar concerns: whether the confirmation order improperly affected Napleton's rights. This court has authority to enter a final order herein.

Article X of the Debtor's Second Amended Plan provides that this Court shall retain jurisdiction over this chapter 11 case to resolve (on a nonexclusive basis) claim objections, requests to estimate claims and to determine all questions and disputes regarding all causes of action, controversies, disputes or conflicts between the Reorganized Debtor and any other party.

## II. Discussion

### A. Grounds on Which an Order or Judgment May be Vacated

Federal Rule of Bankruptcy Procedure 9024 ("Fed. R. Bank. P.") provides that Federal Rule of Civil Procedure ("Fed. R. Civ. P.") 60 applies in cases under the Bankruptcy Code. Fed. R. Civ. P. 60(b), which allows relief from judgments and orders, provides for relief based upon:

(1) mistake, inadvertence, surprise, or excusable neglect;

(2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b);

(3) fraud ... misrepresentation, or misconduct by an opposing party;

(4) the judgment is void;

(5) the judgement has been satisfied, released or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or

(6) any other reason that justifies relief.

■ "Rule 60(b), and thus Rule 9024, is an extraordinary remedy, which is to be granted only in exceptional circumstances." *In re Dorff,* 480 B.R. 919, 922 (Bankr.E.D.Wis.2012) (internal citation omitted).

## B. Right of First Refusal: Must there First be a Sale to a Third Party?

Napleton's Right of First Refusal was to become binding only if the Bahary Partnership "desires to sell the Sale Property or any part thereof and received from some third party a bona fide offer for the purchase thereof Purchaser shall disclose the terms of such offer to Seller, in writing, within five (5) days following the receipt of the offer by Purchaser." Napleton does not argue that the Bahary Partnership desired to sell the property or that it received a bona fide offer for its purchase from a third party. Napleton's inchoate rights were dependent on conditions precedent that have not come into being. Instead, the property was surrendered pursuant to a statutory scheme that allows the surrender of mortgaged property by way of tender of a deed in lieu of foreclosure. The mortgagor gets released from a deficiency judgment if the mortgage foreclosure sale does not bring in at least as much money as is owed on the debt. *In re Robert and Jolene Johnson,* 371 B.R. 336, 340 (C.D.Ill.2007). The statute provides that a mortgagee or mortgagee's nominee may accept a deed from the mortgagor in lieu of foreclosure subject ·to any other claims or liens affecting the real estate. Acceptance of a deed in lieu of foreclosure relieves from personal liability all persons who may owe payment or other obligations secured by the mortgage, including guarantors. *See* 735 ILCS 5/15–1401 (2012 ed.). Napleton had a limited preemptive right to match offers from third parties. It argued at the hearing of this motion that the deed in lieu of foreclosure effort is considered a sale under Illinois law in reliance on *Felbinger and Co. v. Traiforos,* 76 Ill.App.3d 725, 732, 31 Ill.Dec. 906, 394 N.E.2d 1283 (1st Dist.1979). There the Appellate Court interpreted the scope of a brokerage agreement, ruling that a complaint alleging that a defendant's conveyance of property by deed in lieu of foreclosure obligated him to pay a brokerage commission. The Court held that the word "sold" as used therein included conveyance to a mortgagee by a deed in lieu of foreclosure. That Court did not rule that the deed in lieu of foreclosure remedy always amounts to a sale, but that the listing agreement at issue treated the deed in lieu of foreclosure transfer as a sale. Napleton's narrowly drawn Right of First Refusal does not contemplate application to the deed in lieu of foreclosure remedy. There was no third party making a bona fide offer. What would Banco's offer be that Napleton could match within five days? Could Napleton purchase the property at its fair market value in 2012, or for what was owed on the mortgage, i.e, what offer could Napleton match or exceed? The Debtor and Banco Popular did not owe Napleton a duty under the Right of First Refusal. Napleton's right was contingent on two things that never occurred. Its contract rights did not extend to every manner in which the Bahary Partnership could transfer the property in issue. The Right of First Refusal covered neither the.

situation at hand, foreclosure by a mortgagee to realize on its collateral, nor a tax sale by a unit of government, nor any other common ways the Bahary Partnership could transfer or lose control of the property. The deed in lieu of foreclosure procedure was not a desired sale to a bona fide party who made an offer to purchase the property.

### C. The Debtor and Napleton as Parties to an Executory Contract

Section 365 of the Bankruptcy Code allows a debtor to assume or reject executory contracts. Executory contracts generally include contracts on which performance remains due to some extent from each side. Because no third party purchaser offered to buy the property, Bahary Partnership did not owe Napleton any level of performance. Napleton had no rights that necessitated assumption or rejection by Bahary Partnership. Napleton argues that the Debtor's failure to assume the Right of First Refusal leaves it intact to be enforced in its state court action. Not so. Napleton cites cases where rights of first refusal were recognized as property rights where the sale of property was in issue. *See In re Farmland Industries, Inc.,* 284 B.R. 111 (Bankr.W.D.Mo.2002). There a bankruptcy court overturned a sale and reopened bidding between the high bidder at a judicial sale and the holder of a right of first refusal. The agreement in issue provided that the debtor could not transfer the property without first giving UAP–Midsouth written notice 40 days in advance. It defined transfer as any sale or transfer of the property for cash or its equivalent by the debtor to any party; it excluded assignments for the purpose of granting a security interest to a lender and any resulting enforcement of such an interest. Napleton's rights did not cover *any* transfer; the sale agreement stated that the Right of First Refusal applied only to sales to a bona fide third party.

### D. Lack of Notice

■ Napleton was not scheduled as a creditor herein, nor was it given notice of the proposed plan or the hearing at which it was confirmed. That was wrong and unfortunate. Napleton was entitled to due process as its Right of First Refusal gave it an interest in the Bahary Partnership's bankruptcy case. Napleton argues that its due process rights were violated due to the Debtor's failure to schedule its debt and to give it notice of the proposed Plan and the confirmation hearing. As Napleton points out, the "elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Central Hanover Bank & Trust Co.,* 339 U.S. 306, 314, 70 S.Ct. 652, 94 L.Ed. 865 (1950). Napleton had an interest, albeit slight, in the Grand Avenue Property, and therefore should have received notice of the bankruptcy proceedings. The Court must determine whether the lack of notice was prejudicial or if it was harmless error.

■ An error is harmless so long as it does not affect any party's substantial rights. *See* Federal Rule of Civil Procedure 61, made applicable to bankruptcy cases by Federal Rule of Bankruptcy Procedure 9005. That rule states:

Unless justice requires otherwise, no error in admitting or excluding evidence-or any other error by the court or a party-is ground for granting a new trial, for setting aside a verdict, or for vacating, modifying, or otherwise disturbing a

judgment or order. At every stage of the proceeding, the court must disregard all errors and defects that do not affect any party's substantial rights.

"The harmless error rule has been invoked in the bankruptcy context where procedural irregularities ... would not have had an effect on the outcome of the case." *Kane v. Johns–Manville Corp.*, 843 F.2d 636, 647 (2d Cir.1988).

The Court must determine whether Napleton had a right to notice. Notice of the time fixed for filing of objections and the hearing to consider plan confirmation is mandatory only as to "the debtor, the trustee, all creditors and indenture trustees." Federal Rule of Bankruptcy Procedure 2002(b). Napleton is neither a debtor, a trustee, an indenture trustee nor a creditor to whom a debt is owed as defined by 11 U.S.C. § 101(10) (creditor is defined as an entity who holds a claim against the debtor or the bankruptcy estate). Napleton is neither a creditor/claim holder nor a party to an executory contract.

■ The outcome would not have been different had Napleton received notice and participated in the bankruptcy case. As determined herein, Napleton's Right of First Refusal does not extend to situations outside of a sale to a bona fide third party. Banco Popular's acceptance of a deed in lieu of foreclosure is very different. The lack of notice under the circumstances herein amounted to harmless error and does not support Napleton's request for equitable relief.

### E. Beneficial Owner's Authority to Bind the Trust

When the sale agreement was executed, title to the Grand Avenue Property was held in an Illinois land trust. The Debtor argues that as the trust beneficiary, Napleton lacked authority to sign the sale agreement in issue based on *Seaberg v.* *American National Bank & Trust Co.*, 35 Ill.App.3d 1065, 342 N.E.2d 751, 755 (1st Dist.1976). In *Seaberg*, the Illinois Appellate Court noted that the trust agreement provided that the beneficiary of the land trust in issue did not have authority to act as agent of the holder of legal title when it affirmed the trial court's dismissal of a specific performance suit involving a contract for the sale of real estate.

The parties herein have not provided the court a copy of the trust documents, however, the Court will look to case law to determine whether Napleton, a beneficiary, could enter into a contract on behalf of the land trust. In Illinois the trustee of a land trust holds both legal and equitable title; the beneficiary has only a personal property interest. "[A]ll but one of the incidents to ownership of real property remain with the beneficiary: The trustee's sole duty under the trust is to hold and dispose of legal title at the written direction of the beneficiaries." *U.S. v. Petersen Sand and Gravel, Inc.*, 806 F.Supp. 1346, 1358 (1992). That court noted "it is the beneficiary who bears the burden of land ownership under Illinois laws, not the trustee." *Petersen*, 806 F.Supp. at 1358. As the beneficiary of a land trust, Napleton may have been authorized to enter into the sale agreement in issue. However, even if the sale agreement was properly executed by Napleton as its beneficiary, its Right of First Refusal did not become a property interest or claim in the absence of a sale to a bona fide third party. A recent Seventh Circuit opinion discusses the land trust issue. *See Stable Investments Partnership v. Vilsack*, 775 F.3d 910, 2015 WL 55466 (7th Cir.2015).

### III. Conclusion

■ The Motion for Relief under Federal Rule of Bankruptcy Procedure 9024 from this Court's December 29, 2014 Or-

der is **DENIED.** Napleton has not shown that the Court made a mistake in the application of law or that there is newly discovered evidence that, with reasonable diligence, could not have been discovered previously.