CENTRAL STATES, SOUTHEAST AND SOUTHWEST AREAS PENSION FUND, et al., Plaintiffs,

v.

The STROH BREWERY COMPANY, Defendant.

No. 97 C 1262.

United States District Court, N.D. Illinois, Eastern Division.

Sept. 30, 1997.

960

James Patrick Condon, Central States Law Dept., DePlaines, IL, David Manchnacki, Gregory R. Schermerhorn, Law Offices of Russell N. Luplow, Birmingham, MI, for Plaintiffs.

Dwight B. Palmer, Jr., David Bradley Altman, Wilson & McIlvaine, Chicago, IL, for Defendant.

## MEMORANDUM OPINION

KOCORAS, District Judge.

This matter is before the Court on defendant The Stroh Brewery Company's motion for summary judgment. For the reasons set forth below, the motion is granted.

### BACKGROUND

Plaintiff Central States, Southeast and Southwest Areas Pension Fund ("Central States" or the "Pension Fund"), brings suit against defendant, The Stroh Brewery Company ("Stroh"), for collection of withdrawal liability pursuant to the Employee Retirement Income Security Act of 1974 (ERISA), as amended by the Multiemployer Pension Plan Amendments Act of 1980 ("MPPAA"). 29 U.S.C. §§ 1001–1461. The Pension Fund alleges that Stroh incurred withdrawal liability when it acquired the assets and liabilities of G. Heileman Brewing Company, Inc. ("Heileman").

In October, 1990, Heileman withdrew from participation in the Pension Fund. Thus, the Pension Fund assessed withdrawal liability against Heileman for $73,456.66, pursuant to MPPAA. Shortly thereafter, Heileman filed for Chapter 11 bankruptcy reorganization. During the bankruptcy proceedings, a reorganization plan (the "Plan") was proposed and confirmed by order of the bankruptcy court (the "Order"). Under the Plan, the Pension Fund received payment of $22,626.06 on its withdrawal liability assessment. The Plan contains a provision releasing Heileman and "its affiliates" from all claims in bankruptcy. Although the Plan did not give creditors the opportunity to opt-out of the release provision, the creditors, including the Pension Fund, were given the opportunity to vote in favor of or against the Plan itself. The Pension Fund abstained from voting on the Plan.

Heileman had a number of subsidiary corporations including the Christian Schmidt Brewing Company, Inc. ("CSB"). The Pension Fund alleges that CSB, along with other wholly-owned subsidiary corporations, was jointly and severally liable for Heileman's

withdrawal liability obligation to the Pension Fund. The Pension Fund asserts that because CSB did not participate in the bankruptcy proceedings, it continued to be liable for the amount of assessment unpaid by Heileman in bankruptcy reorganization. In 1996, Stroh purchased Heileman, and in turn, CSB, and assumed all liabilities including, according to the Pension Fund, the remaining portion of the assessment. Further, the Pension Fund maintains that it is not bound by the Plan's release and discharge provisions, as they apply to CSB, because it did not vote in favor of the Plan.

Stroh filed this motion for summary judgment arguing that: (1) Heileman's liability never spread to CSB; and (2) the release provision bars the Pension Fund's claims. Moreover, Stroh asks the Court to stay the case pending the Supreme Court's decision on the issue of the proper statute of limitations for withdrawal liability cases in *Bay Area Laundry & Dry Cleaning Pension Trust Fund v. Ferbar Corp.*, 73 F.3d 971 (9th Cir.1996), *cert. granted*, —— U.S. ——, 117 S.Ct. 1690, 137 L.Ed.2d 817 (1997) (No. 96–370, 1997 Term). Before addressing the motion, it is necessary to review the legal standard governing motions for summary judgment.

### LEGAL STANDARD

Summary judgment is appropriate if the pleadings, answers to interrogatories, admissions, affidavits and other materials show "that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Fed. R.Civ.P. 56(b). Only those disputes over facts that might affect the outcome of the suit under the governing law properly prevent a grant of summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). The party seeking summary judgment has the initial burden of showing that no such issue of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). When a

properly supported motion for summary judgment has been made, the opposing party must then set forth specific facts showing that there is a genuine issue for trial. *Id.* The opposing party is entitled to the benefit of all favorable inferences that can reasonably be drawn from the underlying facts, but not every conceivable inference. *De Valk Lincoln Mercury, Inc. v. Ford Motor Co.*, 811 F.2d 326, 329 (7th Cir.1987). The entry of summary judgment against a party is appropriate if the party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and in which that party will bear the burden of proof at trial." *Celotex Corp.*, 477 U.S. at 322, 106 S.Ct. at 2552. It is with these principles in mind that we turn to the instant motion for summary judgment.

### DISCUSSION

#### I. Trade or Business

Prior to determining whether the release in the Plan bars the Pension Fund's claims against Stroh, it is necessary to determine whether CSB acquired withdrawal liability from Heileman. If CSB did not acquire withdrawal liability from Heileman, then the liability remained with Heileman and was discharged in bankruptcy. In turn, the Pension Fund's case against Stroh would be meritless.

Stroh contends that Heileman's withdrawal liability never spread to CSB because CSB was not a "trade or business" under § 1301(b)(1) of the MPPAA. Under § 1301(b)(1), "trades or businesses under common control shall be treated ... as a single employer." Thus, each trade or business under common control is jointly and severally liable for the withdrawal liability of another such business. See *Central States, Southeast and Southwest Pension Fund v. Personnel, Inc.*, 974 F.2d 789 (7th Cir.1992) (citing *Western Conference of Teamsters Pension Trust Fund v. Lafrenz*, 837 F.2d 892, 893 (9th Cir.1988)).[1] Hence, there are two requirements that must be met to estab-

---

**1.** Congress enacted § 1301(b)(1) to prevent employers from avoiding withdrawal liability by fractionalizing their operations. *Western Confer-* *ence of Teamsters Pension Trust Fund v. Lafrenz*, 837 F.2d 892, 894 (9th Cir.1988).

lish a "single employer": (1) CSB must be a "trade or business;" and (2) CSB must be under "common control". *Personnel,* 974 F.2d at 792. There is no dispute that CSB was under "common control" of Heileman. The parties dispute over whether CSB was a "trade or business".

Section 1301(b)(1) does not define the phrase "trade or business." Instead, it states that regulations prescribed under section 1301(b)(1) shall be "consistent and coextensive with regulations prescribed for similar purposes by the Secretary of the Treasury under § 414(c) of the Internal Revenue Code of 1986." The Internal Revenue Code, however, does not define the term for general purposes. See *Comm'r of Internal Revenue v. Groetzinger,* 480 U.S. 23, 27, 107 S.Ct. 980, 983, 94 L.Ed.2d 25 (1987). In *Groetzinger,* the Supreme Court considered the definition of the phrase "trade or business" as it appears in section 162(a) of the Internal Revenue Code. See 26 U.S.C. § 162(a) (1988) (allowing a taxpayer to deduct ordinary and necessary expenses paid or incurred in carrying on a trade or business). The Court stated that "to be engaged in a trade or business, the taxpayer must be involved in the activity with continuity and regularity and the taxpayer's primary purpose must be for income or profit." 480 U.S. at 35, 107 S.Ct. at 987. Although the Court was analyzing a provision of the tax code, the Seventh Circuit has applied this definition in a case involving withdrawal liability under ERISA. See *Personnel,* 974 F.2d 789.

■ The determination of whether an entity is a "trade or business" is a question of fact. See *Central States, Southeast and Southwest Areas Pension Fund v. Slotky,* 956 F.2d 1369, 1373 (7th Cir.1992). However, if the facts are undisputed, the determination of whether an entity is a "trade or business" is properly resolved on summary judgment. *Slotky,* 956 F.2d at 1374. The facts show that CSB, from its formation, was a dormant, "shell" corporation without assets, employees, income or losses. Central States contends that CSB was a "trade or business" "regardless of whether it was 'dormant' or 'inactive'" because it was incorpo-

rated in Wisconsin, filed annual reports, and conducted annual shareholder meetings. However, the "legal form of the disputed enterprise—be it a 'partnership,' 'corporation,' or some other type of organization—is not dispositive of whether the enterprise is a 'trade or business.'" *Connors v. Incoal, Inc.,* 995 F.2d 245, 254 (D.C.Cir.1993). Rather, whether an enterprise engages in activity for profit or income is determinative. In its Response to Defendant's Motion for Summary Judgment, the Pension Fund cites to an exhibit attached to its 12(N) statement, containing CSB's annual reports. These reports specifically state: "Did you engage in actual business in the past year? Yes___ No X." CSB continually responded that it did not engage in actual business. Moreover, income tax returns filed by Heileman show that CSB had neither income nor losses and did not conduct any business activity. (See Stroh's 12(M) Statement, Exh. 2(A) and Exh. 2(B)).

■ Applying the Supreme Court's definition of "trade or business" to this case, we hold that CSB was not a "trade or business" under § 1301(b)(1) as it did not engage in any activity for income or profit. This fact is undisputed. Because we find that CSB was not a "trade or business" under § 1301(b)(1), CSB was not jointly and severally liable to the Pension Fund for Heileman's withdrawal liability. As a result, Heileman's withdrawal liability remained with Heileman and was discharged in the bankruptcy proceeding. Since the Pension Fund cannot sue Stroh for the remaining payment based on CSB's liability, summary judgment for Stroh is appropriate.

## II. The Release in the Bankruptcy Plan

Stroh asserts in its motion that Central States is barred from pursuing claims against it for Heileman's withdrawal liability because Central States waived such claims and released Heileman in the bankruptcy proceedings. Central States does not contest the release and discharge provisions of the Plan as they apply to Heileman and Stroh, as successor to Heileman, but does contest the release's validity as it affects third-party non-debtors such as CSB.

The Order confirming the Plan of reorganization states: "[e]ach Holder ... of a Claim or Interest, ... in consideration for the obligations of the Debtors ... shall be deemed to have forever waived, released and discharged each other ... from any and all rights, claims and liabilities ..." (Confirmation Order, Stroh's 12(M) statement, Exh. 3). Moreover, the Order permanently restrains and enjoins Central States from bringing claims against Heileman, Heileman's affiliates, and its successors in interest.

Central States contends that the release and discharge provisions do not apply to its suit against a third-party nondebtor, namely CSB, because it did not consent to the provisions. Central States claims that because there was no opportunity for it to opt-out of the release and discharge provisions, it did not consent to be bound. Moreover, Central States asserts that when given the opportunity to vote in favor of or against the Plan, it abstained from voting. As such, it did not vote in favor of or otherwise agree to the Heileman Plan, including its third-party nondebtor release and discharge provisions.

■ Because CSB was not a "trade or business," it was not liable for Heileman's withdrawal liability. Thus, the issue of whether Central States may sue third party nondebtors is inconsequential. Because Central States bases its suit against Stroh on CSB's withdrawal liability, Central States' suit must fail. Central States is bound by the release and discharge provisions of the Plan and is enjoined from bringing claims against Stroh based on Heileman's withdrawal liability. See *In re Specialty Equipment Companies, Inc.*, 3 F.3d 1043, 1045 (7th Cir. 1993) (noting that a bankruptcy court has the power to determine the legality of provisions, including releases, incorporated into a reorganization plan). The provisions of the confirmed Plan bind all creditors including those who voted against the Plan or abstained from voting. 3 F.3d at 1046. Thus, Central States may not sue Heileman or Heileman's successor, Stroh, for a debt that was discharged in bankruptcy.

### III.  Motion to Stay Action

Stroh's final argument is that Central States may have filed this action after the statute of limitations period if the Supreme Court decides to apply a six-year limitations period from the date the employer incurred withdrawal liability. The Supreme Court has taken the limitations issue for review in *Bay Area Laundry & Dry Cleaning Pension Trust Fund v. Ferbar Corp. of Cal.*, 73 F.3d 971 (9th Cir.1996), *cert. granted,* —— U.S. ——, 117 S.Ct. 1690, 137 L.Ed.2d 817 (1997) (No. 96–370, 1997 Term). Stroh asks this Court to stay the proceedings in this action until *Ferbar* is decided. Stroh does not argue that Central States' action was untimely under the Seventh Circuit's statute of limitations and accrual rule announced in *Central States, Southeast & Southwest Areas Pension Fund v. Navco*, 3 F.3d 167, 172 (7th Cir.1993), *cert. denied,* 510 U.S. 1115, 114 S.Ct. 1062, 127 L.Ed.2d 382 (1994). Because Stroh has not argued in its motion that Central States' action is untimely under *Navco*, the Court will not address the argument. The Court will not stay the proceedings because it grants summary judgment for Stroh on grounds other than the limitations period.

### CONCLUSION

For the reasons discussed above, the defendant's motion for summary judgment is granted.