In the

# United States Court of Appeals

### For the Seventh Circuit

No. 14-2034

HOTEL 71 MEZZ LENDER LLC,
a Delaware limited liability
company, *et al.*,

*Plaintiffs/Counter-Defendants-Appellees,*

*v.*

THE NATIONAL RETIREMENT FUND,

*Defendant/Counter-Claimant-Appellant*

and

THE TRUSTEES OF THE
NATIONAL RETIREMENT FUND,

*Counter-Claimant-Appellant.*

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 13 C 3306— **Rubén Castillo**, *Chief Judge.*

ARGUED NOVEMBER 5, 2014 — DECIDED FEBRUARY 6, 2015

Before BAUER, ROVNER, and TINDER, *Circuit Judges.*

ROVNER, *Circuit Judge.*  The price a litigant pays for filing a flawed or unconvincing motion for summary judgment ordinarily is denial of the motion, not loss of the case. But the district court in this case appears to have treated the lack of sufficient evidentiary support for the motion as a reason to enter summary judgment against the movant. *See Hotel 71 Mezz Lender LLC v. Nat'l Retirement Fund*, 9 F. Supp. 3d 863, 873-74 (N.D. Ill. 2014). The court did so in the absence of a cross-motion for summary judgment on the issue that it found to be dispositive, and without first giving the unsuccessful movant notice that it was entertaining the possibility of entering summary judgment against it or the opportunity to respond. Because we are not convinced that the movant had no plausible arguments to make in opposition to an adverse grant of summary judgment, we vacate the judgment and return the case to the district court for further proceedings.

## I.

In this action, the National Retirement Fund ("NRF") and its trustees seek to hold Hotel 71 Mezz Lender LLC ("Mezz Lender") and Oaktree Capital Management, L.P. ("Oaktree") responsible for multiemployer pension fund withdrawal liability pursuant to section 4201 of the Multiemployer Pension Plan Amendments Act of 1980 ("MPPAA"), 29 U.S.C. § 1381. Oaktree, through Mezz Lender, provided financing for the acquisition of a hotel by Chicago H&S Hotel Property LLC ("H&S"). When H&S later defaulted on the loan, it was taken into bankruptcy and the hotel was liquidated. NRF contends that the sale of the hotel triggered withdrawal liability on the part of H&S and any other "trade or business" under common

control with it—including both Oaktree and Mezz Lender. *See* 29 U.S.C. §1301(b)(1). Oaktree and Mezz Lender, on the other hand, contend that the claim of withdrawal liability—whatever its merits—is barred by the bankruptcy reorganization plan pursuant to which the hotel was sold.

NRF, formerly known as the UNITE HERE National Retirement Fund and successor-in-interest to the HEREIU Pension Fund, is a multiemployer pension fund that provides retirement and related benefits to unionized workers; it is administered by a board of trustees that includes both union and employer representatives. Collective bargaining agreements covering certain union workers require employers to make regular contributions to NRF on behalf of their employees. During the time period relevant to this case, Hotel 71, a full-service, 437-room hotel on Chicago's Wacker Drive, was a party to one such agreement obligating it to make contributions to NRF's predecessor, the HEREIU Pension Fund, on behalf of the hotel's housekeepers, bartenders, bellhops, laundry workers, and various other employees.

H&S purchased Hotel 71 in 2005. The purchase was financed by a $100 million senior mortgage loan as well as a $27.3 million mezzanine loan. Oaktree funded the mezzanine loan to H&S (actually to an LLC that was H&S's sole manager and member, but we may omit that detail) through Mezz Lender. Upon completion of the purchase, H&S succeeded to the obligations imposed by several collective bargaining agreements with the hotel's workforce, including the obligation to make contributions to the HEREIU Pension Fund. We shall hereafter refer to the pension fund and its trustees simply as NRF or the "pension fund."

H&S defaulted on both the senior and mezzanine loans in 2007. On October 3, 2007, Mezz Lender acquired H&S in a Uniform Commercial Code ("UCC") Article 9 foreclosure sale with the intent to place H&S in bankruptcy and attempt to collect the outstanding balance of its loan there. Mezz Lender immediately brought in Patrick O'Malley, a restructuring specialist from a management consulting firm, to run the company. H&S filed for bankruptcy protection pursuant to Chapter 11 of the Bankruptcy Code within the month, and thereafter Mezz Lender participated in the negotiation of a plan of reorganization. The bankruptcy court approved the finalized reorganization plan on March 21, 2008.

Pursuant to the approved plan, substantially all of H&S's assets—principal among them being Hotel 71—were sold in July 2008 to H&S's senior lender. NRF and its trustees view the sale as a "complete withdrawal" by H&S from the pension fund, which triggered withdrawal liability on the part of H&S and any trade or business under common control with it—including, in NRF's view, Mezz Lender and Oaktree. *See* 29 U.S.C. §§ 1301(b)(1), 1381.[1] Counsel for NRF sent a notice and demand letter setting forth that position to Mezz Lender on

---

[1] There appears to be no dispute that the new owner of the hotel continued to make the requisite contributions to the pension fund following the sale. NRF nonetheless contends that withdrawal liability was triggered by the failure of the hotel's purchaser to provide a bond to NRF or to place an appropriate amount of money in order to secure its obligations to the pension fund and by the absence of appropriate language in the purchase agreement acknowledging H&S's secondary liability to the pension fund in the event that the purchaser withdrew from the fund in the five-year period following the sale. *See* 29 U.S.C. § 1384(a)(1)(B) & (C).

April 1, 2013. NRF ultimately reached a settlement with H&S itself pursuant to which NRF was permitted a general unsecured claim of $550,000 against the bankruptcy estate; and it appears that NRF was able to collect less than $70,000 on that claim. Nearly all of the more than $2.1 million in withdrawal liability and accrued interest that NRF attributes to H&S and the other members of its controlled group thus remains unpaid.

Section 13.1 of the reorganization plan approved by the bankruptcy court contains a provision stating that any distributions received by creditors or contemplated by the plan are in full satisfaction of any and all claims arising in connection with H&S's Chapter 11 case that creditors might have against "Releasees," whom the plan defines to include the debtor (H&S), its then-owner (Mezz Lender), and any officers, members, or managers of the debtor's owner, and that all such claims are released. Section 13.4 in turn enjoins any effort to pursue the claims released by section 13.1. Mezz Lender and Oaktree read these provisions as releasing them from any claim by NRF for withdrawal liability and barring any effort by NRF to pursue them.

Mezz Lender and Oaktree (which we will refer to collectively as the "Oaktree parties") filed suit in the district court seeking a declaratory judgment that the reorganization plan released any claim of withdrawal liability arising from H&S's actions in the Chapter 11 proceeding, including the sale of its assets, and enjoined NRF from pursuing any claim of withdrawal liability against either Oaktree or Mezz Lender. NRF answered the complaint and in turn filed counterclaims against Mezz Lender, Oaktree, and John Does 1-10–the latter repre-

senting anyone else in H&S's controlled group–asserting that each was jointly and severally liable for withdrawal liability.

When the parties appeared before the district court to address the Oaktree parties' request for a preliminary injunction against NRF—which the Oaktree parties ultimately withdrew—counsel indicated to the court that they believed that the case could be promptly resolved by way of cross-motions for summary judgment, and neither side indicated that discovery was necessary in order to present those motions. The district court accordingly set a briefing schedule, and the parties pursued their respective positions in their cross-motions.

The Oaktree parties contended in their motion that the release and injunction provisions of the reorganization plan barred NRF from pursuing any claim of withdrawal liability against them. NRF, in response, contended that those provisions did not apply to its claims of withdrawal liability; and, in its own cross-motion for summary judgment against Mezz Lender,[2] NRF affirmatively contended that Mezz Lender was in fact responsible for withdrawal liability because, *inter alia*, it was a trade or business under common control with H&S. Its

---

[2] NRF explains that its motion focused on Mezz Lender because it did not believe there was any real dispute that Mezz Lender was responsible for withdrawal liability as a trade or business under common control with H&S. By contrast, NRF evidently had concluded that Oaktree's potential liability likely would require further factual development, if not a trial. The district court noted, for example, there was a factual dispute between the parties as to the precise nature of the relationship between Oaktree and Mezz Lender. *See* 9 F. Supp. 3d at 867.

summary judgment memorandum, however, focused on the common-control question and the procedural requirements for asserting withdrawal liability and passed over in silence the legal criteria for identifying a trade or business on which such liability may be imposed and made no argument as to why Mezz Lender constituted such a trade or business. *See* R. 36 at 8-9.[3] Mezz Lender itself did not seek summary judgment on this point; rather, it contended that "the record [was] rife with factual issues which preclude[d] the Court from entering summary judgment in favor of NRF" on the withdrawal liability claim. R. 38 at 9. In particular, Mezz Lender emphasized that whether it constituted a trade or business for purposes of withdrawal liability was a fact-bound question, that NRF had yet to make a case for the notion that Mezz Lender qualified as a trade or business, and that, consequently, it was premature for the court to render a judgment on this question. R. 38 at 9; *see also* 9 F. Supp. 3d at 873 (acknowledging Mezz Lender's position).

The district court turned to Mezz Lender's cross-motion for summary judgment first. The court noted that the motion discussed only Mezz Lender's putative withdrawal liability; it made no argument as to the potential liability of Oaktree and John Does 1 through 10. As a result, NRF had, in the court's view, "waive[d] [any] argument that Oaktree and John Does 1-10 are jointly and severally liable for Chicago H&S's withdrawal liability," 9 F. Supp. 3d at 871 n.3; only the claim against Mezz Lender had been preserved. The parties agreed

---

[3] NRF's counsel subsequently remarked to the district court that NRF did not expect Mezz Lender to deny that it was a trade or business. R. 47 at 4.

that Mezz Lender was the one and only owner of H&S when its assets were sold in June 2008; consequently, the court found that Mezz Lender was in common control with H&S for purposes of potential withdrawal liability. *Id.* at 872-73.

The court turned, then, to the question of whether Mezz Lender was appropriately characterized as a "trade or business" for that purpose. *Commissioner of Internal Revenue v. Groetzinger*, 480 U.S. 23, 35, 107 S. Ct. 980, 987 (1987), instructs a court to consider whether the entity in question engaged in activity (1) with continuity and regularity and (2) principally in order to generate income or profit. *See* 9 F. Supp. 3d at 873 (noting these criteria).[4] A key function of the *Groetzinger* test, as we recognized in *Cent. States Se. & Sw. Areas Pension Fund v. Messina Prods., LLC*, 706 F.3d 874, 878 (7th Cir. 2013), "is to distinguish trades or businesses from passive investments, which cannot form a basis for imputing withdrawal liability under section 1301(b)(1)." Whether a particular enterprise constitutes a trade or business that is subject to withdrawal liability, or a passive investment that is not, amounts to a question of fact. *See Cent. States, Se. & Sw. Areas Pension Fund v. Neiman*, 285 F.3d 587, 593-94 (7th Cir. 2002); *Cent. States, Se. & Sw. Areas Pension Fund v. Slotky*, 956 F.2d 1369, 1373 (7th Cir. 1992); *see also McDougall v. Pioneer Ranch Ltd. Partnership*, 494

---

[4]     *Groetzinger* articulated this test for purposes of determining what constitutes a trade or business for purposes of the tax code, *see* 26 U.S.C. § 162(a), but we have adopted the test for purposes of assessing an individual or company's eligibility for withdrawal liability. *See Cent. States Se. & Sw. Areas Pension Fund v. Messina Prods., LLC*, 706 F.3d 874, 878 (7th Cir. 2013) (collecting cases).

F.3d 571, 575-76, 578 (7th Cir. 2007) (reviewing summary-judgment finding that defendant constituted a trade or business for clear error), and *id.* at 578 (Cudahy, J., concurring in the judgment) (agreeing district court's finding was not clearly erroneous, but noting that the subsidiary facts would also support a contrary finding). A variety of factors bear on this question, among them "the purpose, tax status, and legal form of the enterprise." *Cent. States, Se. & Sw. Areas Pension Fund v. CLP Venture LLC*, 760 F.3d 745, 749 (7th Cir. 2014), *cert. denied*, — S. Ct. —, 2015 WL 133005 (U.S. Jan. 12, 2015). The proper characterization of the enterprise turns on the specific (subsidiary) facts of the case, *see Neiman*, 285 F.3d at 593-94 (quoting *Groetzinger*, 480 U.S. at 36, 107 S. Ct. at 987), with no one factor alone being dispositive, *Sun Capital Partners III, L.P. v. New England Teamsters & Trucking Indus. Pension Fund*, 724 F.3d 129, 141-42 (1st Cir. 2013), *cert. denied*, 134 S. Ct. 1492 (2014).

As we have noted, NRF's motion all but ignored this issue. Apparently thinking that there was no doubt that Mezz Lender constituted a trade or business, its motion and supporting memorandum did not mention the *Groetzinger* test, let alone apply that test to the evidence.

Although it acknowledged the factual nature of this issue, the district court also took note of our observation in *Slotky* that where the only dispute between the parties is how the enterprise is to be characterized in light of the subsidiary facts, and where the court itself will function as the factfinder in the case, there is no need to postpone resolution of the issue for trial notwithstanding the parties' disagreement on the appropriate

characterization of the enterprise. 9 F. Supp. 3d at 873 (citing *Slotky*, 956 F.2d at 1374). In the court's view, this was the very situation with which it was confronted: The parties' sole disagreement was as to whether Mezz Lender constituted a trade or business, and because the MPPAA does not entitle the parties to a jury trial, *see id.* (citing *McDougall*, 494 F.3d at 576), the court itself would be serving as the finder of fact. The court was therefore satisfied that it could resolve the trade-or-business question on summary judgment. *Id.*

The court, confronted with a minimal record which established only that Mezz Lender was a limited liability corporation which extended financing for the acquisition of a hotel by H&S and ultimately acquired complete ownership of H&S in a UCC foreclosure sale, concluded that NRF had not carried its burden on this issue. The record was "devoid of any facts indicating that [Mezz Lender] [has] a trade or business under MPPAA." 9 F. Supp. 3d at 874. This was reason to deny NRF's motion for summary judgment, which the court indicated it was doing. *Id.* But the court also made the following declaration: "Based on the facts the parties present, the Court can only conclude that the relationship between [Mezz] Lender and Chicago H&S is one of a 'passive investment.'" *Id.* Rather than a determination that there was an unresolved dispute of fact as to whether Mezz Lender was engaged in trade or business activity when it helped finance H&S's acquisition of Hotel 71 and later assumed ownership of H&S when it defaulted on the loan, that sentence reads like a final determination that the financing was merely a passive investment which precluded the imposition of withdrawal liability on Mezz Lender. All doubt on that score was eliminated by the

court's ensuing discussion of the Oaktree parties' own motion for summary judgment.

The court found it unnecessary to consider whether, as the Oaktree parties contended, the bankruptcy reorganization plan precluded NRF's withdrawal liability claim:

> Having already decided that [Oaktree, Mezz Lender,] and John Does 1-10 are not jointly and severally liable for Chicago H&S's withdrawal liability, … the Court need not address the parties' arguments as to [the Oaktree parties'] motion. The Court has declared the rights of the parties, and declines to go any further in resolving this declaratory judgment. … The Court has resolved the substantial controversy by deciding the withdrawal liability issue, and it finds no other live controversy in this dispute to warrant declaratory relief. Accordingly, the Court grants [the Oaktree parties'] motion with respect to the issue of withdrawal liability.

*Id.*

NRF filed a timely motion to alter or amend the judgment pursuant to Federal Rule of Civil Procedure 59(e), arguing that the district court had erred by *sua sponte* entering summary judgment in favor of the Oaktree parties on the question of withdrawal liability without first giving NRF notice that it was considering that course and the opportunity to respond. Its motion noted that there were a number of facts in the record suggesting that Mezz Lender was a trade or business, including the fact that Mezz Lender was organized as a formal business entity (LLC), that it not only lent money to H&S but

later acquired H&S and took it into bankruptcy, and then actively participated in the negotiation of a reorganization plan for H&S. NRF argued further that discovery would likely yield more proof that Mezz Lender was appropriately characterized as a trade or business rather than a passive investment. NRF's motion also contended that it had not waived any claim of withdrawal liability against Oaktree and John Does 1 through 10. NRF indicated that it had elected not to pursue summary judgment against those counter-defendants because it believed there were issues of material fact with respect to their withdrawal liability that precluded summary judgment. It reminded the court that its summary judgment memorandum had expressly reserved its right to pursue relief against Oaktree and the John Doe counter-defendants at a later time.

After a brief hearing, the court denied the motion to reconsider, precipitating this appeal.

## II.

We review the district court's grant of summary judgment to the Oaktree parties de novo. *E.g.*, *Stable Inv. Partnership v. Vilsack*, — F.3d —, 2015 WL 55466, at *5 (7th Cir. Jan. 5, 2015). For the reasons that follow, we conclude that the district court erred in granting summary judgment to the Oaktree parties. However deficient NRF's motion was with respect to Mezz Lender's status as a trade or business, the deficiency did not warrant the entry of summary judgment *against* NRF on that issue, absent NRF first being given notice and a chance to present evidence showing that there was a material dispute of fact on that question precluding summary judgment. We could sustain the entry of summary judgment if it were clear beyond

dispute that Mezz Lender was not a trade a business, which is partly what the Oaktree parties argue in defense of the judgment. But we conclude, to the contrary, that the issue is not free from doubt.

A motion for summary judgment is a contention that the material facts are undisputed and the movant is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a). The party pursuing the motion must make an initial showing that the agreed-upon facts support a judgment in its favor. *See* Rule 56(a) & (c)(1); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24, 106 S. Ct. 2548, 2553 (1986); *Outlaw v. Newkirk*, 259 F.3d 833, 837 (7th Cir. 2001); *Logan v. Commercial Union Ins. Co.*, 96 F.3d 971, 978-79 (7th Cir. 1996). Where, as here, the movant is seeking summary judgment on a claim as to which it bears the burden of proof, it must lay out the elements of the claim, cite the facts which it believes satisfies these elements, and demonstrate why the record is so one-sided as to rule out the prospect of a finding in favor of the non-movant on the claim. *See Reserve Supply Corp. v. Owens-Corning Fiberglas Corp.*, 971 F.2d 37, 42 (7th Cir. 1992); *United States v. Four Parcels of Real Property in Greene & Tuscaloosa Counties in State of Ala.*, 941 F.2d 1428, 1438 (11th Cir. 1991). If the movant has failed to make this initial showing, the court is obligated to deny the motion. *See Johnson v. Hix Wrecker Serv., Inc.*, 651 F.3d 658, 662 (7th Cir. 2011) ("A party opposing summary judgment does not have to rebut factual propositions on which the movant bears the burden of proof and that the movant has not properly supported in the first instance."); *Johnson v. Gudmundsson*, 35 F.3d 1104, 1112 (7th Cir. 1994) (even an unanswered motion for summary judgment

cannot be granted unless the movant has shown that the facts warrant judgment in its favor).

This is how we read the district court's assessment of NRF's motion for summary judgment. Essentially, the court said that the few facts disclosed by NRF's motion were insufficient to establish that Mezz Lender was a trade or business as opposed to a passive investment for purposes of withdrawal liability. For that reason, the court indicated that it was denying NRF's motion. 9 F. Supp. 3d at 874. There can be no quarrel with that aspect of the district court's ruling. NRF, as we have said, did not even cite the standard for determining whether Mezz Lender is a trade or business let alone apply that standard to the record facts.

But saying that one party is not entitled to summary judgment is not to say that its opponent necessarily *is*. The denial of a motion for summary judgment reflects the court's judgment that one or more material facts are disputed or that the facts relied on by the motion do not entitle the movant to judgment as a matter of law. An insufficiently supported request for summary judgment, like NRF's, may leave room for a contention that the undisputed facts warrant judgment in favor of the non-movant, but the merits of such a contention demand independent analysis.

The Oaktree parties could have, but did not, seek summary judgment on the merits of NRF's claim for withdrawal liability on the ground, *inter alia*, that Mezz Lender did not constitute a trade or business. Instead, they pursued summary judgment on an entirely different ground, namely that sections 13.1 and 13.4 of the bankruptcy reorganization plan barred NRF from

pursuing the withdrawal liability claim against them, whatever the merits of that claim might be. All that the Oaktree parties had to say with respect to whether or not Mezz Lender constituted a trade or business was that factual disputes abounded on that issue, rendering it inappropriate for the court to resolve the question on summary judgment.

Without a complete explanation, however, the district court treated its decision that NRF had failed to show that Mezz Lender was a trade or business *not* as a decision that this issue would have to be resolved by way of a trial, but rather as a final, dispositive finding that Mezz Lender was, as a matter of law, not a trade or business but rather a passive investment exempt from the imposition of withdrawal liability. 9 F. Supp. 3d at 874. Because, as we have said, the Oaktree Parties did not ask the court to make that finding on summary judgment, the district court's order can be interpreted in one of two ways. Either the court equated the denial of NRF's motion for summary judgment by itself as warranting a grant of summary judgment to Mezz Lender, or the court implicitly concluded on its own motion that the undisputed facts entitled Mezz Lender to summary judgment although Mezz Lender had not asked for summary judgment on that ground. Whichever understanding of the district court's order is accurate, the court granted summary judgment to the Oaktree parties in error.

The first possibility misconceives the nature of the summary judgment process. A motion for summary judgment is not an invitation to summarily resolve the case for *or* against the movant based on the paper record. Put another way, it is not a waiver of the movant's right to a trial—or to argue that factual disputes warrant a trial—in the event the court finds

the motion wanting. A summary judgment motion represents a contention that the facts recited therein warrant judgment in the *movant's* favor, nothing more. *See Goldstein v. Fidelity & Guar. Ins. Underwriters, Inc.*, 86 F.3d 749, 750-51 (7th Cir. 1996); *Market Street Assocs. Ltd. Partnership v. Frey*, 941 F.2d 588, 590 (7th Cir. 1991); *Zook v. Brown*, 748 F.2d 1161, 1166 (7th Cir. 1984); 10A Charles A. Wright, Arthur R. Miller, & Mary K. Kane, FED. PRACTICE & PROC. § 2720, 332-34 (3d ed. 1998). It is not a concession that the same facts might warrant judgment against the movant, or that the movant could marshal no additional evidence or arguments in opposition to the prospect of such an adverse judgment. A court may think the motion insufficiently supported, blind to outstanding disputes of fact, or off-base on the relevant legal principles. These are grounds for denying the motion. But denying the motion normally will leave the movant in essentially the same position, procedurally, that it would have been in had it not requested summary judgment in the first instance. If the court moves on to entertain the prospect of entering summary judgment against the unsuccessful movant, whether in response to a cross-motion for summary judgment or on its own initiative, then the court must be mindful of its obligation to adopt what Judge Shadur aptly characterizes as a dual, "Janus-like" perspective. *See, e.g., Shiner v Turnoy*, 29 F. Supp. 3d 1156, 1160 (N.D. Ill. 2014). That is, the court must now grant the unsuccessful movant all of the favorable factual inferences that it has just given to the movant's opponent. *See R.J. Corman Derailment Servs., LLC v. Int'l Union of Operating Engrs., Local Union 150, AFL-CIO*, 335

F.3d 643, 647-48 (7th Cir. 2003).[5] Only if the court can say, on that sympathetic reading of the record, that no finder of fact could reasonably rule in the unsuccessful movant's favor may the court properly enter summary judgment against that movant. *E.g.*, *O'Leary v. Accretive Health, Inc.*, 657 F.3d 625, 630 (7th Cir. 2011).

The second possibility is one we alluded to a moment ago: that, having considered and denied NRF's motion for summary judgment, the court was convinced that the material, undisputed facts and the law warranted entry of summary judgment against NRF on the merits of its withdrawal liability claim, notwithstanding the lack of a cross-motion from the Oaktree parties on that claim. A court does have the authority to enter summary judgment on its own motion. Rule 56(f). But whenever it entertains the possibility of summary judgment against a party *sua sponte*, the court must afford the party notice of that possibility and a reasonable opportunity to respond. *Id.*; *see also Lynch v. Ne. Regional Commuter R.R. Corp.*, 700 F.3d 906, 910-11 (7th Cir. 2012); *Simpson v. Merchants Recovery Bureau, Inc.*, 171 F.3d 546, 549 (7th Cir. 1999). This includes the chance to marshal evidence and argument in opposition to summary judgment, even where, as here, the party has already sought and failed to obtain summary judgment in its favor.

---

[5] Thus, even when both parties have moved for summary judgment, each contending that the relevant facts are undisputed and the case may be resolved without a trial, the proper outcome may be to deny both motions, on the ground that the material facts are, in fact, disputed. *See id.*

As the district court recognized, there are cases in which the parties are in agreement (or it is otherwise clear) as to what the relevant facts are, and the only dispute is over how those facts are to be characterized. When such cases present claims as to which there is no right to a jury trial (or the party opposing summary judgment against whom summary judgment is contemplated has not asked for one), placing the judge in the role of factfinder, it may be appropriate for the court to resolve the characterization dispute on summary judgment notwithstanding the fact-bound nature of that dispute. MPPAA cases presenting disputes over whether a particular entity or activity is properly characterized as a trade or business or instead a passive investment can fall into this category, as there is no right to a jury trial in litigation over withdrawal liability. *CLP Venture, supra*, 760 F.3d at 750 (citing *McDougall, supra*, 494 F.3d at 576); *see also* 9 F. Supp. 3d at 873 (citing, *inter alia*, *McDougall* and *Slotky*, 956 F.2d at 1374). But this was not a case in which the universe of facts informing the proper characterization of Mezz Lender had been identified and agreed upon. NRF's motion had almost entirely ignored the trade or business question, and the Oaktree parties' reply simply contended that the question was a factual one that was not amenable to resolution on summary judgment. The record revealed only a few rudimentary facts about Mezz Lender and its relationship with H&S—for example, that Mezz Lender was an LLC, that it loaned money to H&S for the acquisition of a hotel, that it purchased H&S at the UCC foreclosure sale and took H&S into bankruptcy, and that it was the one and only owner of H&S when H&S's assets were liquidated. No case cited by the parties or the district court indicates that such facts by them-

selves are necessarily dispositive of the trade or business question, regardless of what other facts might exist. *Cf. Slotky*, 956 F.2d at 1374 (noting that it was appropriate for the district court to resolve the question when "[t]here is no more evidence to put in"); *McDougall*, 494 F.3d at 575 (noting that district court may resolve the trade-or-business dispute when the subsidiary facts are undisputed). And even if one might infer from the fact of NRF's motion that it believed these few facts sufficient to warrant summary judgment in its favor, its motion was not, as we have discussed, a concession that these same facts were dispositive for all purposes, including the possibility of granting summary judgment to the Oaktree parties.

The court failed to give NRF the opportunity to present evidence beyond that cited in its own unsuccessful motion for summary judgment to show why a factfinder nonetheless could find in its favor on the question of whether Mezz Lender constitutes a trade or business for purposes of withdrawal liability. It goes without saying that the court did not think that the facts on which NRF had based its motion were sufficient to establish that Mezz Lender was something more than a passive investment. But that does not rule out the possibility that NRF, given the chance, could have produced additional facts which might permit a factfinder to conclude that Mezz Lender was a trade or business. Moreover, given that the parties had filed their respective summary judgment motions without first engaging in discovery, NRF might have asked the court for leave to pursue additional evidence before the court decided whether Mezz Lender itself was entitled to summary judgment on this point. Rule 56(d). And consistent with a point we have made several times now, NRF would have been entitled to

have the court view whatever expanded evidentiary record it presented in the light most favorable to it and to assume that the finder of fact could resolve any disputed factual questions in its favor. Having been deprived of these opportunities, NRF was deprived of the basic procedural protections to which the target of summary judgment is entitled. *See, e.g., Lynch*, 700 F.3d at 910-11; *cf. Jones v. Union Pacific R. Co.*, 302 F.3d 735, 740 (7th Cir. 2002) (unsuccessful movant on notice of possibility court might enter summary judgment against it, given opponent's request to treat its memorandum opposing summary judgment for movant as a cross-motion for summary judgment).

This error could be deemed harmless if we were convinced that NRF had no reasonable case to make for the notion that Mezz Lender was a trade or business. *See, e.g., Goldstein*, 86 F.3d at 751. This is a central theme that the Oaktree parties pursue in their brief. But we do not think the matter free from doubt.

As NRF points out, we have said that "formally recognized business organizations pose 'no interpretative difficulties' for the *Groetzinger* test." *CLP Venture*, 760 F.3d at 749 (quoting *Central States, Se. & Sw. Areas Pension Fund v. Fulkerson*, 238 F.3d 891, 895 (7th Cir. 2001)); *see also id.* at 749-50 ("[B]ecause formal business organizations ordinarily operate with continuity and regularity and are ordinarily formed for the primary purpose of income or profit, it seems highly unlikely that a formal for-profit business organization would not qualify as a 'trade or business.'") (citing *Central States Se. & Sw. Areas Pension Fund v. SCOFBP, LLC*, 668 F.3d 873, 878 (7th Cir. 2011)).

As a limited-liability corporation, Mezz Lender was a formally recognized business organization, and it extended a multi-million dollar loan to H&S so that H&S might acquire and operate a hotel. The loan carried with it the obligation to remit interest payments to Mezz Lender. Extending a substantial loan at a specified rate of interest to a commercial enterprise would on its face seem like business activity. The Oaktree parties nonetheless emphasize that Mezz Lender was not a repeat lender but a special purpose entity that extended a single loan to H&S. In essence, they argue that Mezz Lender was simply the vehicle for the Oaktree parties to make an investment in H&S.

We may assume without deciding that a factfinder could deem Mezz Lender to be a passive investment for the reasons the Oaktree Parties have articulated; but we are not convinced that a factfinder would necessarily take this view, even if presented with additional evidence. NRF points out that Mezz Lender not only extended the loan to H&S, but when H&S defaulted, purchased H&S in a UCC foreclosure sale with the aim of collecting the balance of the loan in bankruptcy, appointed a restructuring specialist (O'Malley) to manage H&S on its behalf,[6] and, once H&S had filed for bankruptcy, actively participated in the negotiation of a reorganization plan. These

---

[6]   The fact that Mezz Lender appointed O'Malley to run H&S rather than do so itself does not necessarily demonstrate passivity on Mezz Lender's part, as the Oaktree parties have suggested. O'Malley could be viewed as Mezz Lender's agent. Whether a parent corporation uses its own personnel to run its subsidiary or engages an outsider, it is running the subsidiary—or so, at least, NRF could argue. *See Sun Capital Partners, supra*, 724 F.3d at 146-48 & n.30.

facts suggest that NRF would have a plausible case to make in opposition to a summary-judgment determination that Mezz Lender was not a passive investment. They also distinguish this case from one like *Central States, Se. & Sw. Areas Pension Fund v. Stroh Brewery Co.*, 220 Bankr. R. 959, 962 (N.D. Ill. 1997), which held that a company, although formally incorporated and in good standing as such, did not qualify as a trade or business for purposes of withdrawal liability when it had been nothing but a dormant "shell" corporation since its formation. NRF adds that, with the benefit of discovery, it might be able to identify additional facts supporting an inference that Mezz Lender was functioning as an active business rather than a passive investment. The merits of whatever case NRF (and, for that matter, the Oaktree parties) might be able to make are not for us to predict or evaluate at this juncture. All we need decide is that it is not pointless to afford NRF the procedural protections to which it would ordinarily be entitled as the target of summary judgment. On the limited record before us, the question of whether Mezz Lender is merely a passive investment rather than an active business does not strike us as being free from doubt. It would therefore not be an empty exercise in formality to permit NRF the opportunity to oppose the entry of summary judgment against it on this issue. Beyond this limited observation, we express no opinion on the merits of the issue.

A final word about Oaktree and the John Doe defendants is in order. As we have noted, because NRF's summary judgment motion was restricted to Mezz Lender and offered no evidence or argument in support of imposing withdrawal liability on either Oaktree or the John Doe defendants, the

district court concluded that NRF had waived any basis for imposing such liability on those defendants. 9 F. Supp. 3d at 871 n.3. In its oral remarks regarding NRF's subsequent motion to reconsider, the court appeared to criticize NRF for pursuing a piecemeal approach to the litigation and "hold[ing] back" its case against the other defendants until it first saw how the court disposed of its request for summary judgment against Mezz Lender. R. 47 at 6. The court's finding of waiver was manifestly incorrect. Nothing in Rule 56 demands an all-or-nothing approach to summary judgment. Requests for (and grants of) partial summary judgment, including summary judgment as to fewer than all parties and claims, are nothing new. *See*, *e.g.*, *Leonard v. Socony-Vacuum Oil Co.*, 130 F.2d 535, 536 (7th Cir. 1942). The rule, in fact, expressly anticipates that a party may seek summary judgment as to a limited portion of its case when it provides that "[a] party may move for summary judgment, identifying each claim or defense—or the part of each claim or defense—on which summary judgment is sought." Fed. R. Civ. P. 56(a). There is no doubt that a court may grant, and a party may seek, summary judgment as to one party or one claim, leaving other claims and other parties to be addressed at a later point in the litigation. *See* 10A FED. PRAC. & PROC. § 2715, at 254. A request for partial summary judgment can serve a useful brush-clearing function even if it does not obviate the need for a trial, *see Flynn v. Sandahl*, 58 F.3d 283, 288 (7th Cir. 1995), and it may also facilitate the resolution of the remainder of the case through settlement. Certainly we agree with the district court that a party should not pursue a needlessly piecemeal litigation strategy. *See Tucker v. Williams*, 682 F.3d 654, 661-62 (7th Cir. 2012); *Whitford v. Boglino*, 63 F.3d

527, 530 (7th Cir. 1995). But the record gives us no reason to doubt the good faith of NRF's assessment that it had a reasonable basis on which to seek an early summary judgment against Mezz Lender but not the other counter-defendants. There was nothing improper about NRF's decision to seek summary judgment against Mezz Lender alone; and in doing so, NRF did not waive its counterclaim as to Oaktree and the John Doe defendants. On the contrary, NRF's summary judgment memorandum noted that it was reserving is counter-claims as to those defendants. R. 36 at 2 n.1.

The Oaktree parties urge us to affirm the judgment in their favor based on the alternative ground that they pursued in their own motion for summary judgment and that the district court did not reach: *i.e.*, the contention that sections 13.1 and 13.4 of the reorganization bar NRF from pursuing the withdrawal liability claim against them, whatever the merits of that claim might be. There appears to be no dispute that if the Oaktree parties' position on this question is correct, it would be unnecessary to decide whether or not Mezz Lender constitutes a trade or business. And certainly the district court, on remand, will be free to address that question before proceeding any further on any other issue. But, consistent with our role as a reviewing court, we choose to leave the merits of that question to the district court in the first instance.

## III.

For all of the reasons we have discussed, the district court erred in granting summary judgment to the Oaktree parties on the question of whether Mezz Lender constitutes a trade or business for purposes of withdrawal liability. We therefore

VACATE the judgment and REMAND for further proceedings consistent with this opinion.